(No. 77982.

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. RONALD R. ALVINE, Appellant.

*Opinion filed September 26, 1996.*

Charles Schiedel, Deputy Defender, and Charles Hoffman, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield (Barbara E. Preiner, Solicitor General, and Arleen C. Anderson and Steven R. Splitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Du Page County, the defendant, Ronald R. Alvine, was convicted of first degree murder, burglary, and possession of a stolen motor vehicle. Defendant waived his right to a jury for sentencing. At a separate sentencing hearing the trial court found defendant eligible for the death penalty. The trial court further determined that there were no mitigating factors sufficient to preclude imposition of that sentence and defendant was sentenced to death. The trial judge also sentenced defendant to 14 years' imprisonment on the burglary and possession of a stolen motor vehicle convictions, to run concurrently with his death sentence. The defendant's execution has been stayed pending direct review by this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a). For the reasons that follow, we reverse count I of defendant's murder conviction, vacate his death sentence, and remand for a new trial. We affirm defendant's conviction on count II, felony murder, and his convictions and sentence for burglary and for possession of a stolen motor vehicle.

## FACTS

The present charges arose from an incident in the early morning of April 20, 1992, in which Officer Mike Browning was killed. At trial, Charles Pierce testified that he lived across the street from Crossroads Chevrolet, a car dealership. Just after midnight, Pierce witnessed a break-in at the dealership and telephoned 911. A tape of Pierce's call to the 911 dispatcher was played at trial. Pierce saw a white male, later identified as defendant, inside the dealer's showroom. Pierce saw defendant enter a Corvette, accelerate, and drive through the showroom window. Defendant then pulled the car over to the right of the dealership entrance

gates. Defendant exited the Corvette, re-entered the showroom, and reappeared near the Corvette after approximately one minute. At the same time, Pierce saw a police vehicle approach and park just past the front gate inside the entrance to the dealership, near the Corvette and a blue Riviera. An officer exited the police car and stood in front of his squad car, with his arms extended and his hands clasped in front of him, facing the Corvette.

A second police car arrived and parked just outside the entrance gate. The sole occupant of the second squad car, later identified as the victim, Mike Browning, exited. Browning stood beside his squad car with his arms extended and his hands clasped, as if holding a gun. Pierce then saw defendant jump into the Corvette and accelerate, driving towards Browning. The Corvette struck Browning and his squad car. After striking Browning's car, the Corvette swung to the right and spun out into the street.

Donald Reever, a West Chicago policeman, testified that he was the first officer to arrive at the scene. Reever pulled into the well-lighted parking lot through the open entrance gate. After he arrived, he saw a blue vehicle backing up near the used-car section of the lot. The blue vehicle struck a parked car.

Reever observed defendant sitting in the driver's seat of the blue car. Reever then opened the door of his car, drew his gun, and leaned out of the door with his gun resting on the spotlight attached to his car. In compliance with Reever's order, defendant exited the blue car. About the same time, Reever heard Browning state over the radio that he had arrived at the scene, and Reever saw Browning's squad car pull up behind him and a little to the left.

As Browning's squad car pulled behind Reever, defendant was walking toward the front of the blue car.

Reever again told defendant to put his hands up in the air, but defendant began to step to Reever's left. Defendant then ran and jumped into the Corvette. The Corvette accelerated quickly. Reever stepped back to get out of the way, and unsuccessfully attempted to grab defendant with his left hand. Reever turned around and saw Browning standing in front of his squad car at the front entrance to the dealership lot.

As the Corvette continued to accelerate, it drove directly at Browning. Reever did not see any brake lights, and the acceleration continued. Reever yelled to Browning to get out of the way. According to Reever, Browning was struck by the front end of the Corvette and was hurled up into the windshield of the car. Browning rolled over the hood onto the passenger side of the vehicle, and onto the ground. The Corvette then hit Browning's squad car, turned westbound onto the highway in front of the dealership, and spun around on the wet pavement.

Browning sustained fatal head injuries, including multiple skull fractures. He was pronounced dead at 4:20 a.m. on April 20. Dr. Deborah Kay, a pathologist, testified that death was caused by multiple blunt force injuries and extensive injuries to the head.

Paramedic John Niemann treated defendant at the crime scene. Defendant had an observable fracture to his left thigh, which was later discovered to have resulted from a bullet. Defendant was alert and oriented and responded appropriately to questions. As defendant was being lifted into the ambulance, paramedics asked him what had occurred. Defendant stated that "he got in my way and I just put my foot to the floor." Niemann testified that defendant was laughing while he made the statement. Niemann did not smell alcohol on defendant's breath. Niemann also stated that defendant was smirking inappropriately at other times during the conversation.

Paramedic Michael Eckler also treated defendant at the scene on the night of the offenses. When Eckler arrived there he found defendant lying on his back, handcuffed, next to a white Corvette. Defendant was conscious and answered questions appropriately. Defendant told Eckler that he had been drinking, and Eckler smelled a moderate amount of alcohol on defendant's breath.

Joseph Boyle, a physician at Central Du Page Hospital, treated defendant in the early morning hours of April 20, 1992. Defendant's condition was stable, and he had a gunshot wound to the left thigh. A routine blood test for the presence of narcotics or alcohol revealed that defendant's blood-alcohol level was 0.17.

Frances Culler, head nurse of the emergency room at Central Du Page Hospital, also examined defendant. Culler testified that defendant was alert and responsive. She did not observe overt signs of alcohol and did not recall if she detected an odor of alcohol on defendant's breath.

Val Blazic, a deputy sheriff, guarded defendant at the hospital. From his position outside defendant's room, Blazic overheard defendant tell his sister over the telephone, "I had to kill the son of a bitch. I had to or he would have killed me. You would think he would have shot out one of the tires instead of shooting me."

Patricia McKinstry, a physical therapist, treated defendant while he was a patient at Central Du Page Hospital. Defendant told McKinstry that he had stolen a car or a convertible and that "the damn cop got in front of me. Shot me in the *** leg." Defendant related to McKinstry that his sister had telephoned him and that she said two police officers had been killed. Defendant told McKinstry that he did not kill two of them, he only "got one."

Conflicting evidence of whether or not police weap-

ons had been fired at the scene was presented. Detective Raymond Rodriquez testified that when Officer Browning's gun was recovered from the ground at the crime scene it contained the maximum number of cartridges in the magazine. The weapon also contained a discharged cartridge casing caught abnormally in the ejection port. Rodriquez believed that the gun had discharged abnormally due to an improper grip on the weapon. Officer Reever testified that he never fired his gun on the evening of the offenses. Officer Laz Perez, who examined Reever's gun after the incident, testified that he received the weapon fully loaded and he did not find powder burns in the chamber. However, Richard Vaughn, a forensic sergeant, examined the same weapon two days later and, using an eye glass and a light, observed a substance in the barrel that appeared to be gunpowder residue. Reever testified in rebuttal that he last fired his gun approximately six weeks earlier. He used the gun to destroy a deer injured in a traffic accident. Reever stated that although proper police procedure requires that the gun be cleaned after each use, Reever did not clean his gun after shooting the deer.

Robert Schoenthaler, co-owner of Crossroads Chevrolet, testified that defendant had no authority to enter Crossroads Chevrolet or to remove a 1992 Corvette from the premises.

For the defense, Mary Alvine testified that she is defendant's youngest sister. On April 24, 1992, Mary spoke with defendant by telephone. Defendant told her that he crashed and that he was ducking from bullets that were flying up above his head and through the windshield. Defendant told his sister that because he was ducking down, he did not see the officer before he hit him. Mary Alvine denied that defendant had said he had to "kill the son of a bitch." During cross-examination she admitted that defendant told her he broke into the dealership to steal a Corvette.

The defense presented the testimony of Gary W. Cooper, an accident investigator. Cooper's testimony consisted of his observations of markings on and damage to the Corvette defendant drove, Browning's squad car, and the steel gate at the dealership entrance.

Defendant did not testify on his own behalf.

At the close of evidence, the jury returned verdicts finding defendant guilty of both knowing murder and felony murder in addition to burglary and possession of a stolen motor vehicle.

Following the verdicts, the defense moved for a hearing regarding defendant's fitness for sentencing. The court found a *bona fide* doubt of defendant's fitness existed and ordered defendant to be examined. Following a hearing, the judge found defendant fit to be sentenced.

Defendant waived his right to a jury for sentencing and the case proceeded to a bench sentencing. At the first stage of the sentencing hearing, the judge found that defendant was 18 or older at the time of the murder for which he was convicted. The judge further found that defendant was eligible for the death penalty based on the statutory aggravating factors of murder in the course of a felony (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(b)(6)) and knowing murder of a policeman in the course of his official duties (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(b)(1)).

The sentencing hearing then progressed to the aggravation and mitigation phase. The State presented evidence of defendant's prior convictions for two separate burglaries, unlawful use of a weapon by a felon, forgery, involuntary manslaughter and arson. Defendant presented the testimony of his relatives, a mitigation expert and a psychiatrist.

At the conclusion of the evidence in aggravation and mitigation the judge gave a detailed ruling and found

that the mitigating factors were insufficient to preclude the imposition of the death sentence. Defendant was sentenced to death on the knowing murder count.

## ANALYSIS

The defendant raises a number of issues concerning both the guilt-innocence phase of the proceedings and the sentencing hearing. However, due to our disposition of defendant's first issue on appeal, we need address only those claims concerning the guilt-innocence phase of trial.

The first issue we address is whether defendant's conviction on count I, for knowing murder, must be reversed because of language added to the pattern jury instructions.

Defendant was indicted for intentional, knowing and felony murder. Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3). The State nol-prossed the intentional murder count and proceeded to trial on the knowing and felony murder counts.

At the close of evidence in the guilt phase of trial, defendant asserted that he was entitled to argue that he was fleeing to get out of the line of police fire at the time of Officer Browning's death. Defendant contended there was evidence that he had sustained a gunshot wound during the incident and that both officers' guns had been fired. Defendant argued that based on this evidence it was possible that he had been shot before he entered the Corvette, supporting his argument that he fled in response to an excessive use of force. Defendant also stated that based on the evidence presented of his blood-alcohol level at the time of the offense, the jury should be allowed to consider whether his actions were reckless or if he knew that his acts created a strong probability of death or great bodily harm.

We note that during closing arguments defendant contended that evidence showed that he had been shot

before he entered the Corvette, and in the process of fleeing, struck the tubular steel gate at the entrance to the dealership. Defendant further argued that Officer Browning's fatal head injuries were not the result of being struck by the vehicle, but by the steel gate.

Based on this theory of the case, the defense sought jury instructions on self-defense and on the lesser offenses of second degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—2) and reckless homicide (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a)).

The trial court ruled that defendant could rely on a theory of self-defense and could argue that he was guilty of one of the lesser offenses, second degree murder or reckless homicide, but only as to count I, the knowing murder charge (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(1)). The judge ruled that it was improper to instruct the jury on self-defense or lesser offenses for count II, the felony-murder charge (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(2)).

The parties discussed how to present the instructions so that the jury would understand which instructions applied to the appropriate murder count. The defense tendered a set of pattern instructions, but the judge rejected them because he did not believe they adequately differentiated between the two murder charges. The State submitted a set of instructions with the phrase "Strong probability of bodily harm" placed as a subheading or as a parenthetical within the text of those instructions pertaining to count I. For those instructions pertaining to count II, the phrase "Felony Murder" appeared as a subheading. Except for the subheadings and parenthetical phrase, the instructions mirrored the pattern jury instructions.

The defense objected to the State's instructions on count I, arguing that the use of parenthetical language was not recommended in the pattern instructions. Over

defendant's objection, the judge allowed the instructions tendered by the State.

After the judge gave the instructions, the jurors retired to deliberate. The jurors deliberated from afternoon until 10 o'clock that night. The next morning they sent the judge a note asking if there was a time limit on their deliberations. They also asked the judge if there was some legal action he would take if they were unable to reach a verdict. After consultation with both parties, the judge told the jurors there was no time limit and asked them to continue their deliberations.

Approximately 1¹/₂ hours later, the jurors sent another note to the judge. The note read:

"We are having a problem in only one area of deliberation. The page of instructions that explains 'A person acts knowingly ...' is not clear to us. Can you explain it to us in plain English. This is very important to our deliberation for the following reason:

In the document of Jury instructions it states only once '... *he knew that his acts* created a strong probability of great bodily harm.'

In all other sections of the document regarding the language of bodily harm it states:

'Under the law, a person charged with first degree murder (strong probability of great bodily harm) may be ...' No mention is made of 'he knew his act ...'

Is the standard of the law: 'strong probability of great bodily harm' or 'he *knew* that his acts created a strong probability of great bodily harm.'

Please help us with this technical matter.

Sincerely,

Foreman" (Emphasis in original.)

The trial judge consulted with the parties to formulate a response, but before an answer was agreed on, the jury returned a verdict finding defendant guilty on all counts.

Defendant claims that the jury instructions on count I were internally contradictory and confused the jury. He argues that the effect of the erroneous instructions

was that he was deprived of his constitutional right to a fair trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8.

We first address the State's argument that defendant has waived this issue. As part of his claim, defendant contends that the trial judge should have given Illinois Pattern Jury Instructions, Criminal, No. 7.01X (3d ed. 1992) (hereinafter IPI Criminal 3d No. 7.01X) instead of using the subheadings and the parenthetical language. IPI Criminal 3d No. 7.01X is specifically designed for those cases, like this one, in which a defendant is charged with more than one murder count, one of which is felony murder, and where the court will also be giving second degree murder instructions that will apply to murder counts other than felony murder. IPI Criminal 3d No. 7.01X, Committee Note. IPI Criminal 3d No. 7.01X instructs the jury that the judge will use the terms "Type A" and "Type B" to distinguish between "different kinds of first degree murder."

Although defendant raises this argument on appeal, he did not tender IPI Criminal 3d No. 7.01X at trial. It is well established that a party may not raise on appeal the failure to give an instruction unless the instruction was tendered at trial. *People v. Tannenbaum*, 82 Ill. 2d 177, 180 (1980). Accordingly, defendant has waived the argument that the court should have given IPI Criminal 3d No. 7.01X.

Defendant has not waived his general challenge to those jury instructions that included the differentiating language. At trial, defendant properly objected to inclusion of the parenthetical information in the jury instructions for count I. Defense counsel also tendered a set of instructions without the subheadings and parenthetical phrases. This issue was also raised in defendant's posttrial motion. Therefore, defendant has preserved the general issue for review.

Defendant's substantive argument regarding the jury instructions focuses on the content of the phrase used to differentiate between the two murder counts. The challenged language appeared in the text or headings of some nine different instructions. Defendant points out that the phrase "Strong probability of bodily harm" is an incomplete statement of the mental state necessary for a finding of guilty of "knowing" first degree murder. Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(2). In contrast to the phrase "strong probability of bodily harm" employed here in the text or headings of some nine different instructions to differentiate between the two murder counts, the first degree murder statute states that:

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> ***
>
> > he knows that such acts create a strong probability of death or great bodily harm to that individual or another." Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(2).

Although the supplemental language omitted any mention of the requisite mental state, the text of both the definitional and the issues instructions for count I properly explained the mental state requisite for a finding of guilty. Defendant argues that because the knowledge element described in the body of the instruction conflicted with the wording of the subheadings and parenthetical phrases, the jurors could have convicted him on count I if they believed the State had proven his acts created a substantial risk of death or great bodily harm, without regard to his mental state.

Defendant relies on *People v. Jenkins*, 69 Ill. 2d 61 (1977), and *People v. Haywood*, 82 Ill. 2d 540 (1980), to support his claim of reversible error. In *Jenkins*, during a trial for attempted murder a central issue was

whether the level of the force defendant used was justified. The judge in *Jenkins* instructed the jury that it should find against the defendant on the attempted murder count if the defendant performed an act that constituted a substantial step towards the commission of the crime of murder. The instruction omitted any reference to the fact that defendant must not have been justified in using the force he employed. A separate jury instruction properly stated the law, including that defendant must not have been justified in using the force that he employed. This court held that the instructions were contradictory and inconsistent, and that the giving of contradictory instructions on an essential element in the case was prejudicial error. *Jenkins*, 69 Ill. 2d at 66.

Similarly, in *People v. Haywood*, 82 Ill. 2d 540, 545 (1980), the trial court gave two instructions on the defense of voluntary intoxication. The first instruction, a pattern instruction, stated that "an intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly and intentionally." A second, non-IPI instruction told the jury that intoxication would not be a defense unless it rendered defendant "incapable of any mental action." *Haywood*, 82 Ill. 2d at 544. Citing *Jenkins*, this court held that when conflicting instructions are given, one of which is a correct statement of law and the other is an incorrect statement of law, the error is reversible and not harmless. *Haywood*, 82 Ill. 2d at 545.

The State argues that the instant case is distinguished from the facts in *Jenkins* and *Haywood* because the instructions were not contradictory. The State maintains the supplemental language was a mere label intended to help the jurors to differentiate between the first degree murder counts.

We agree with the State's position that, in contrast to the facts in *Jenkins* and *Haywood*, these jury instruc-

tions did not facially present conflicting accounts of the law. The definitional and issues instructions contained all of the necessary elements and were, by themselves, correct legal statements. We also believe that it was not improper to use supplemental language to convey to the jury that the instructions for self-defense and second degree murder applied only to count I.

Nonetheless, jury instructions should not be misleading or confusing. *People v. Bush*, 157 Ill. 2d 248, 254 (1993). Here, the insertion of supplemental language that contained only a partial description of a key element of the offense allowed the possibility that the jury would be confused or misled regarding the mental state necessary for a conviction on count I.

In this case, we are not limited to an abstract analysis of whether or not the inclusion of this supplemental language confused the jurors. The first note from the jury to the court indicated some difficulty in reaching a verdict. The second note from the jurors informed the court that the jury was confused on the question whether a knowing mental state was required for a finding of guilty. Although the text of some of the instructions contained complete statements of the law, the effect of the inserted language was that the jurors were demonstrably confused on this key issue. The jurors found one correct description of the mental state for the offense yet were apparently confused by the repeated references to the shorthand description of the offense.

The State argues that even though the jurors stated they were uncertain whether or not a knowing mental state was required, the jury's subsequent verdict on count I is valid and should not be reversed. The State argues that it is more likely than not that the jury cured any possible confusion by referring to the text of the definitional and issues instructions. Moreover, the State notes that both parties in their closing arguments

informed the jury that knowledge was a key element of the count I charge.

We cannot adopt the State's reasoning on this point. While this court has previously held that jury instructions should be considered as a whole and not in isolation (*People v. Terry*, 99 Ill. 2d 508, 516 (1984)), this proposition rests on the assumption that the jury instructions clearly and properly inform the jurors of the law, *Terry*, 99 Ill. 2d at 516; see also *People v. Kolep*, 29 Ill. 2d 116, 125 (1963). But when inconsistent instructions are presented to a jury, the jury's ability to perform its function is inhibited because the jury has not been adequately apprised of the law to be applied. *Haywood*, 82 Ill. 2d at 545; *Jenkins*, 69 Ill. 2d at 66. When the instructions are confusing and create a situation in which the jurors believe they are forced to choose between conflicting elements within the instructions, as here, the instructions as a whole cannot be considered curative of the confusion. *Jenkins*, 69 Ill. 2d at 66-67.

In this case, the jury was led to choose between the standard of "knowing his action caused a substantial risk of bodily harm" and the mere existence of a "substantial risk of bodily harm." It is clear that faced with the confusion regarding this element, the jury resolved the dilemma before reaching a verdict. Given the jury's note to the judge, and the absence of any clarifying instruction, we cannot assume that the jurors based their verdict on a proper statement of the law.

We also reject the State's argument that the instructional error is harmless. An error in a jury instruction is harmless if the result of the trial would not have been different if a proper instruction had been given. *People v. Lovelace*, 251 Ill. App. 3d 607, 620 (1993). Here, where the jury was given instructions that caused confusion on the key element of defendant's mental state at the time of the offense, we cannot say the error is harmless. The

jury may well have decided that a strong probability of bodily harm existed, but may not have decided whether defendant knew that his acts created a strong probability of bodily harm or death. Accordingly, we reverse his conviction on count I.

The jury returned a separate verdict form finding the defendant guilty of count II, felony murder, and we next consider the effect on this additional conviction of our reversal of count I. The judge instructed the jurors that to sustain the charge of felony murder the State must prove that the defendant performed the acts that caused the death of the victim and that, when defendant did so, he was committing the offense of burglary. Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(3); IPI Criminal 3d No. 7.01. The only language added to the pattern instructions was the phrase "felony murder," which was used as a heading and a parenthetical to distinguish count II from count I.

We believe that defendant's separate conviction on count II, felony murder, may stand. The statute does not require a finding of a particular mental state for a guilty verdict on a charge of felony murder. Additionally, the instructions used in this case accurately described the elements of the offense, and the jury had no question regarding this count. Finally, as noted above, the jury returned a separate verdict form finding defendant guilty of the felony murder and burglary charges. Therefore, defendant's conviction on count II, felony murder, is not affected by the reversal of his conviction on count I.

We next address defendant's remaining claims arising from the guilt-innocence phase of trial. Defendant argues that numerous remarks made by the prosecutor during the guilt phase of the trial improperly deprived him of a fair trial and warrant reversal of his convictions.

In her rebuttal closing argument, the prosecutor made an analogy linking the role of the victim and his support of another officer at the crime scene to the role of the jury in reaching a verdict. The prosecutor first noted that the victim had arrived at the scene as Officer Reever's backup. She then stated:

> "You are Mike Browning's backup. When Mike got out to that scene the only thing that stood between the defendant and his freedom was Mike Browning, and today, Ladies and Gentlemen, the only thing that stands between this defendant and walking out the door is you. You are Mike Browning's backup."

Defendant claims this comment invited the jurors to identify with the victim and inflamed the passions of the jury against the defendant. However, defendant did not object to the challenged remark at trial and we therefore consider the issue waived. *People v. Mahaffey*, 166 Ill. 2d 1, 27 (1995).

Defendant acknowledges that he did not object to the remark at trial, but argues that the complained-of remark constitutes plain error. Although issues not properly preserved may be considered on review under the doctrine of plain error, we do not believe that the plain error doctrine will defeat the waiver here. 134 Ill. 2d R. 615(a). Plain error may be invoked in criminal cases where the evidence was closely balanced or the error was of such magnitude that the accused was denied a fair trial. *People v. Bean*, 137 Ill. 2d 65, 80 (1990). Neither element has been satisfied in the case before us. The prosecutor presented overwhelming evidence of defendant's guilt, including a 911 tape of an eyewitness account, testimony of the officer at the scene and defendant's statements to medical personnel that he had killed a police officer.

Further, we do not believe that the alleged error deprived defendant of a fair trial. Prosecutors are afforded wide latitude in closing argument. *People v.*

*Thompkins*, 121 Ill. 2d 401, 445 (1988). The prosecutor's closing argument properly focused on the testimony of the witnesses and the facts of the case. Moreover, the court instructed the jurors orally and in writing that the attorneys' arguments were not evidence that could be considered in their deliberations. The complained-of comment occurred at the end of the rebuttal argument and was a part of the prosecutor's pleas to the jurors for a guilty verdict. Considered in the context of the closing remarks as a whole (*People v. Wiley*, 165 Ill. 2d 259, 295 (1995)), we do not believe that this isolated comment prejudiced the outcome of defendant's trial.

Defendant also suggests that he received ineffective assistance of counsel in violation of his sixth and fourteenth amendment rights (U.S. Const., amends. VI, XIV) because his counsel did not object at trial to the "backup" remark. Claims of ineffective assistance of counsel are analyzed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by this court in *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance fell below the objective standard of reasonableness, as measured by reference to prevailing professional norms, and that the substandard representation so prejudiced defendant that there is a reasonable probability that, without the errors, the outcome would have been different. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

In the present case, we find that even if trial counsel's performance was deficient as defendant al-

leges, it did not prejudice defendant. The State presented extensive evidence of defendant's guilt, including, as noted earlier, defendant's statements to witnesses and eyewitness accounts of the events. We therefore believe that trial counsel's failure to object to the challenged remarks did not influence the outcome of defendant's trial. Accordingly, we reject defendant's claim of ineffective assistance of counsel.

Defendant next challenges another prosecutorial remark during rebuttal. In an attempt to contrast the lives and choices of the victim and defendant, the prosecutor described the victim's preparations for work on the night he was killed. The prosecutor then stated that on the same night defendant was

> "[a]lso getting ready for work. His work is burglary and he puts on his uniform. He puts on his black pants, his black shirt, his black sweatshirt, his black jacket. He is ready to go to work."

Defendant alleges that these remarks could only be interpreted as informing the jury that defendant was a professional burglar, implicitly suggesting that he had committed other unrelated burglaries. Defendant further contends that the remarks allowed the jurors to reach a verdict based on evidence outside the record.

Defendant did not object to the challenged remark at trial, and therefore he has waived his claim on this issue. *Mahaffey*, 166 Ill. 2d at 27. We also believe that the alleged improper remark does not constitute plain error. As noted, the prosecution presented substantial evidence of defendant's guilt. Moreover, our review of the remarks indicates that the comments would not have deprived defendant of a fair trial. *People v. Carlson*, 79 Ill. 2d 564, 576-77 (1980). When considered in context, it is reasonable to assume that the prosecutor's description of defendant's attire was intended to support the conclusion that defendant planned and prepared to steal the Corvette from the dealership. Evi-

dence presented to the jury included descriptions of defendant's clothing at the time of the murder and after he was taken into custody.

Defendant also claims that his counsel's failure to object to the comment was ineffective assistance of counsel. As previously noted, we do not find that the remark was improper. Accordingly, trial counsel's performance was not deficient.

Defendant next argues that error occurred when the State commented on defendant's nontestimonial in-court demeanor. In her rebuttal argument, the prosecutor contrasted defendant's life with that of the victim. At the end of her argument, the prosecutor stated that, in contrast to the plight of the victim, "here we are 20 months later and the defendant sits here in court amused by everything that happened." Defense counsel objected to the comment, and the trial judge sustained the objection.

Despite defendant's objection at trial, he did not raise the issue in his post-trial motion, and accordingly he has failed to preserve the issue for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant argues, however, that the waiver rule expressed in *Enoch* does not apply to the instant case because the basis for his objection at trial was a violation of his rights under the fifth amendment. U.S. Const., amend. V.; *Enoch*, 122 Ill. 2d at 190.

We need not decide whether defendant avoids the procedural bar. Generally, the prompt sustaining of an objection by a trial judge is sufficient to cure any error in a question or answer before the jury (*People v. Hobley*, 159 Ill. 2d 272, 315 (1994); *People v. Baptist*, 76 Ill. 2d 19, 30 (1979)), and we believe that the same is true here. The trial judge promptly cured any prejudicial impact by sustaining the defendant's objection and ordering the comment stricken. *People v. Enis*, 163 Ill.

2d 367, 409 (1994). The court also instructed the jury that closing arguments were not evidence. *People v. Hooper*, 133 Ill. 2d 469, 488 (1989). Thus, any arguable error in the prosecutor's comments was cured by the judge's actions. *People v. Morgan*, 142 Ill. 2d 410, 454 (1991).

Defendant next contends that the cumulative effect of the allegedly improper prosecutorial comments denied him a fair trial and warrants reversal of his convictions. Having found no errors, we must reject defendant's contention.

Defendant next argues that the jury instructions on the possession of a stolen motor vehicle count were insufficient and constituted reversible error.

At the close of the guilt phase of defendant's trial, in addition to defendant's convictions for murder and burglary, the jury also returned a verdict of guilty on the charge of unlawful possession of a stolen motor vehicle. Ill. Rev. Stat. 1991, ch. 95$\frac{1}{2}$, par. 4—103(a)(1). To sustain a conviction on a charge of possession of a stolen motor vehicle, the State must prove that the defendant possessed the vehicle; that he was not entitled to possession of the vehicle; and that the defendant knew that the vehicle was stolen. Illinois Pattern Jury Instructions, Criminal, No. 23.36 (3d ed. 1992). Therefore, the defendant argues, to prove that he knew the vehicle to be stolen, the State would first have to prove that defendant had stolen the car, including the intent to permanently deprive the owner of use of the vehicle. Accordingly, defendant claims that the trial judge erred when he did not instruct the jury on this element of the State's burden of proof.

However, as the State notes, defendant has waived this contention because he did not offer an instruction on the element of permanent deprivation at trial. As this court has previously held, a party may not raise on

appeal the failure to give an instruction unless the instruction was tendered at trial. *Tannenbaum*, 82 Ill. 2d at 180. Waiver is also appropriate here because defendant failed to include this claim in his post-trial motions. *Enoch*, 122 Ill. 2d at 186.

Under an exception to the waiver rule, substantial defects in instructions are not waived by failure to make timely objections thereto, if the interests of justice so require. 134 Ill. 2d R. 451(c). The plain error rule applies when the evidence is closely balanced or when the error is of such magnitude that it deprives the defendant of a fair trial. *Carlson*, 79 Ill. 2d at 576-77.

We do not believe that the alleged deficiency in the instructions rises to the level of plain error. The evidence on this issue was not closely balanced, nor is the claimed error of such magnitude that it deprived defendant of a fair trial. *People v. Fields*, 135 Ill. 2d 18, 60 (1990). Consequently, defendant has waived this claim.

Defendant further argues that counsel's failure to offer the correct instruction or object to the instructions given at trial on this issue constituted ineffective assistance. As we have noted above, to prevail on a claim of ineffective assistance of counsel, defendant must prove both that his counsel's actions were deficient and that he was prejudiced. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Defendant's claim of ineffective assistance is without merit. First, defendant fails to establish that he was entitled to have the jury instructed in this manner. The lower court cases defendant relies on are factually distinguishable. Unlike the cases defendant cites, here there was no evidence to support a theory that the car was not stolen or that defendant only intended to keep the car temporarily. Accordingly, we cannot say defense counsel was deficient for failing to request an instruction on the State's burden of proof.

Even if we believed that counsel was deficient in failing to tender the instruction at issue, defendant does not prove prejudice. There was ample evidence to conclude that defendant stole the car. The jury heard defendant's sister's testimony that he told her that he broke into the dealership to steal a Corvette. Defendant's physical therapist also testified that defendant told her he had stolen a car. Therefore, we reject defendant's claim of ineffective assistance of counsel.

As a result of our disposition of this case, we need not consider issues presented in this appeal that pertain to the sentencing phase of the trial. With respect to the first degree murder convictions, the trial judge sentenced defendant on count I and not on count II, felony murder. Accordingly, on remand, defendant may be sentenced on the felony murder count. We also note that defendant has not challenged the sufficiency of the evidence of his guilt, and we find that evidence sufficient to support the guilty verdicts. Consequently, there is no double jeopardy impediment to a new trial on count I. *People v. Brown*, 169 Ill. 2d 132, 169 (1996); *People v. Porter*, 168 Ill. 2d 201, 215 (1995).

## CONCLUSION

For the reasons stated, defendant's conviction on count I is reversed, his death sentence is vacated, and the cause is remanded to the circuit court of Du Page County for a new trial. The judgment entered on the jury's verdict on count II is affirmed. Defendant's convictions for burglary and for unlawful possession of a motor vehicle and corresponding sentence of 14 years' imprisonment are affirmed.

*Convictions affirmed in part*
*and vacated in part;*
*death sentence vacated;*
*cause remanded.*