Second Division
September 29, 2006

No. 1-01-1966


THE PEOPLE OF THE STATE ) Appeal from the
OF ILLINOIS, ) Circuit Court of
) Cook County
)
      Plaintiff-Appellee, )
)
)
      v. ) No. 99 CR 3720
)
)
JACKIE DAVIS, ) Honorable
) Edward M. Fiala, Jr.
) Marjorie C. Laws,
      Defendant-Appellant. ) Judges Presiding.


JUSTICE HALL delivered the opinion of the court:

This cause is before us after remand for a hearing pursuant to *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). Defendant Jackie Davis appeals from the trial court's finding that the State provided legitimate, race-neutral reasons for peremptorily striking African-American venireperson Derrick Summers. The facts and procedural history of this case are fully set forth in our previous opinion (*People v. Davis*, 345 Ill. App. 3d 901, 803 N.E.2d 514 (2004)) and will only be repeated as necessary for resolution of this appeal.

Following a jury trial, defendant was convicted of second-degree murder and sentenced to 18 years' imprisonment. After defendant's motion to reconsider sentence was denied he filed a timely notice of appeal on April 10, 2001.

On direct appeal, defendant contended, among other things, that he was denied

his right to a fair trial because prosecutors struck Summers from the jury in violation of the principles set forth in *Batson*. Upon review, we found that defendant established a *prima facie* case of purposeful racial discrimination in regard to the State's striking of Summers and that the trial court's ruling to the contrary was against the manifest weight of the evidence. *Davis*, 345 Ill. App. 3d at 907.

We also held that the trial court erred by improperly collapsing the first and third steps of the *Batson* analysis into an undifferentiated review when the court determined that no *prima facie* case had been established based in part upon its finding that the prosecutors were credible. *Davis*, 345 Ill. App. 3d at 910-11. We found that the trial court erred in this regard because it was only at the third and final step of the *Batson* analysis, after the State had satisfied its step-two burden of production and articulated its race-neutral reasons for excusing the venireperson in question, that the court was allowed to evaluate the prosecutor's credibility.

We subsequently remanded the case to the trial court with directions to conduct a *Batson* hearing and proceed with steps two and three of the *Batson* analysis where the State was to provide a race-neutral explanation for striking Summers and the trial court then evaluate whether the proffered explanation was pretextual. We retained jurisdiction in order to review the trial court's ruling on the *Batson* matter and to address remaining issues raised in the appeal. Judge Marjorie C. Laws heard the case following remand as Judge Edward M. Fiala, who presided over the original *voir dire*, had since retired from the bench.

Upon remand, the trial court conducted a *Batson* hearing and afterwards

concluded there was no intentional discrimination and that the prosecutors' explanations for peremptorily striking Summers were not pretextual. Defendant now appeals from that decision.

As a preliminary matter we address the waiver issue raised by the State. The State contends that the principal argument defendant now raises on appeal is one he never made at the trial level, namely that the prosecutors' primary explanation for striking Summers based on his rap sheet was pretextual because they were unaware of the rap sheet at the time they excluded him. The State's waiver argument is meritless.

As previously mentioned, we remanded this case to the trial court with directions to conduct a *Batson* hearing where the State was to provide a race-neutral explanation for striking Summers and the trial court then evaluate whether the proffered explanation was pretextual. We retained jurisdiction in order to review the trial court's ruling on the *Batson* matter and we permitted the parties to submit supplemental briefs following the outcome of the *Batson* remand hearing. Defendant's argument is not waived.

Turning to the merits, once a defendant establishes a *prima facie* case of purposeful discrimination under *Batson* and the State satisfies its step-two burden of production by articulating a race-neutral explanation for excusing the venireperson in question, the analysis proceeds to the third and final step where the trial court examines any rebuttal by defense counsel, assesses the genuineness of the State's explanations, and then determines whether those explanations are sufficient to rebut defendant's *prima facie* case. See *People v. Baisten*, 203 Ill. App. 3d 64, 77, 560 N.E.2d 1060

(1990).  In doing so, the trial court must make "'a sincere and reasoned attempt to evaluate the prosecutor's explanations in light of the circumstances of the case.'" *People v. Harris*, 129 Ill. 2d 123, 174-75, 544 N.E.2d 357 (1989), quoting *People v. Hall*, 35 Cal. 3d 161, 167, 197 Cal. Rptr. 71, 75, 672 P.2d 854 (1983).  A trial court's determination that a prosecutor's reasons for striking a prospective juror were sufficiently race-neutral to withstand a *Batson* challenge, turns largely on questions of fact grounded in credibility and is therefore generally accorded great deference and will only be reversed if it is against the manifest weight of the evidence. *Harris*, 129 Ill. 2d at 175.

At the *Batson* remand hearing, prosecutors who conducted the original *voir dire* testified that three factors motivated them to strike Summers: his rap sheet revealed he was previously arrested for murder and other crimes which he did not divulge during *voir dire*; his answers during *voir dire* led them to believe he was a defense witness in a prior rape case; and he interrupted Judge Fiala during *voir dire*.  The trial court found the first proffered explanation regarding the rap sheet sufficiently race-neutral to withstand the *Batson* challenge, and after giving defense counsel an opportunity to respond to the explanation, denied the *Batson* challenge.

The information contained in Summers' rap sheet and his misrepresentations during *voir dire* provided facially race-neutral reasons for striking him.  Concealing a prior criminal charge constitutes a race-neutral reason for exercising a peremptory challenge. See *People v. Kitchen*, 159 Ill.2d 1, 22, 636 N.E.2d 433 (1994).  On this record, we cannot say that the manifest weight of the evidence does not support the trial

1-01-1966

court's finding that the race-neutral explanation offered by prosecutors was valid.

Defendant, however, contends that the prosecutors' reliance upon Summers' rap sheet as a reason for striking him was pretextual because the record indicates that prosecutors were actually unaware of the rap sheet when they struck him. Defendant maintains that the prosecutors' failure to alert the trial court to the existence of the rap sheet during *voir dire,* even after the court afforded them an opportunity to respond to defense counsel's *Batson* motion, and their failure to question Summers about the content and veracity of the information contained in the rap sheet and his misrepresentations during *voir dire*, all indicate that prosecutors were actually unaware of the rap sheet when they struck Summers and that their subsequent explanation for striking him based on his criminal history was pretextual. In further support of this argument defendant points to the comment Judge Laws made at the beginning of the *Batson* remand hearing, "first of all, I don't know why the State when they went into the side bar with Judge Fiala they didn't bring the issue up of the rap sheet at that time. Had that been done, this case would not have been sent back."

Defendant also contends that the prosecutors' proffered reasons for striking Summers were not consistently applied where prosecutors struck Summers purportedly because he had a criminal history and misrepresented himself during *voir dire,* yet they accepted, least likely to decide this case, venireperson Arnold Council, who also had a criminal history and who also misrepresented himself during *voir dire*. Defendant maintains that this inconsistency lends further weight to his argument that the prosecutors' subsequent explanations for striking Summers based on his criminal

˘5˘

1-01-1966

history and misrepresentations are pretextual.

Although we find merit in defendant's arguments, we are constrained to reject them since the evidence is not strong enough to show that prosecutors were unaware of Summers' rap sheet when they struck him.

Defendant next contends he was denied his constitutional right to a fair trial when the trial court allowed the State to admit as substantive evidence Amos Wards's handwritten statement to police that defendant admitted shooting the victim.  Defendant maintains that Ward's handwritten statement was inadmissible because no foundation was laid for its admission and it was impermissibly cumulative to Ward's grand jury testimony.

Defendant requests we consider the merits of these contentions under the plain error rule on the grounds that the evidence was closely balanced on the issue of whether he acted in self-defense and because submission of the handwritten statement to jurors during jury deliberations was so prejudicial he was denied a fair trial.  We must deny defendant's request because the record indicates that defense counsel deliberately waived any issue as to the admissibility of Ward's handwritten statement as substantive evidence by strategically allowing the statement to be admitted in support of his theory of self-defense.

The record shows that not only did defense counsel fail to object to the publication of Ward's handwritten statement, counsel also failed to object to its admission, and on cross-

examination of Ward, repeatedly attempted to get Ward to admit to the contents of his statement.  In addition, the record also shows that in closing arguments, defense counsel utilized the contents of Ward's handwritten statement and grand jury testimony to argue defendant's theory of the case.  On this record, we cannot say the trial court committed plain error in allowing Ward's handwritten statement to be admitted as substantive evidence.

Defendant next maintains that a number of remarks by the prosecutor during closing argument deprived him of a fair trial by improperly misstating the law and burden of proof regarding self-defense; improperly implying that his theory of self-defense was fabricated; implying that he was predisposed to violence; and improperly claiming that the shooting was the result of rival gangs competing for drug business.  Defendant requests we consider the merits of these contentions under the plain error rule on the grounds that the evidence was closely balanced and the remarks so prejudicial he was denied a fair trial.  We must deny defendant's request.

A reviewing court will not reverse a jury's verdict on the bases of improper remarks made during closing argument unless the comments resulted in substantial prejudice to defendant and constituted a material factor in his conviction. See *People v. Alvine*, 173 Ill. 2d 273, 292-93, 671 N.E.2d 713 (1996).  Having reviewed the record, we are not convinced that the alleged

improper remarks, considered individually or collectively, rose to the level of plain error or are of such magnitude that defendant was denied a fair trial.  Furthermore, the trial court instructed the jury that closing arguments are not evidence and that any statements or arguments not based on the evidence should be disregarded.  Our courts have determined that such instructions reduce the likelihood that improper remarks made during closing argument rise to the level of plain error. See *People v. Bratton*, 178 Ill. App. 3d 718, 726, 533 N.E.2d 572 (1989).

Defendant finally contends the trial court abused its discretion in sentencing him to 18 years' imprisonment by failing to consider mitigating factors such as his young age (sixteen years old at the time of the offense), lack of criminal history, his family responsibilities, his low I.Q. of 66, and evidence that he acted in self-defense. Defendant asserts that we should reduce his sentence pursuant to Supreme Court Rule 615(b)(4) (134 Ill.2d R. 615(b)(4)) or remand the cause for resentencing. We must disagree with defendant.

It is well settled that a trial court has broad discretionary powers in imposing sentence. *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626 (2000).  The trial court is granted such deference because it is in a better position than the reviewing court to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *Stacey*, 193 Ill. 2d at 209; *People v. Streit*, 142 Ill. 2d 13, 19, 566 N.E.2d 1351 (1991).  The standard of review is whether the trial court has abused its

discretion in imposing sentence. *Streit*, 142 Ill. 2d at 19.

A sentence which falls within the statutory range of a particular offense is not an abuse of discretion unless it is at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Fern*, 189 Ill. 2d 48, 54, 723 N.E.2d 207 (1999).  Neither exception applies in the present case.

Defendant was sentenced to 18 years' imprisonment for second-degree murder.  The sentencing range for this offense is between 4 and 20 years. 730 ILCS 5/5-8-1(a)(1.5) (West 2000). Defendant's sentence falls within the statutory range.

In addition, review of the record reveals the trial judge properly considered the mitigating factors.  Just before imposing sentence, the trial judge stated:

"I have had the opportunity to listen to the arguments of able counsel in aggravation and mitigation.  I have considered those statutory factors as well.  I have read and re-read the presentence report and I am thoroughly conversant with it as amended.

I have considered the age of the defendant at the time of offense and his age now.  His lack of prior criminal record. His potential for rehabilitation.  Mindful he has two children, there is a dispute as to whether or not he supports those children.

It's upon a consideration of all and each and every one of

these factors that this court is reflected upon and accordingly Mr. Davis, for the offense of second degree murder for which you stand convicted, you're sentenced to the Illinois Department of Corrections penitentiary division for a determinant term of 18 years."

In the instant case, the trial court did not abuse its discretion in sentencing defendant.  The trial court considered the relevant factors and the sentence imposed was within the statutory sentencing range for second-degree murder and was not manifestly disproportionate to the nature of the offense committed.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SOUTH and KARNEZIS, J.J., concur.