THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CAR-LYLE BALDWIN, Defendant-Appellant.

Second District    No. 2—92—0697

Opinion filed January 27, 1994.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, and Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers, Stephen E. Norris, Norbert J. Goetten, and Mary H. Doyle, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE PECCARELLI delivered the opinion of the court:

Defendant, Carlyle Baldwin, was charged with the offenses of aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4 (now 720 ILCS 5/12—4 (West 1992))), mob action (Ill. Rev. Stat. 1991, ch. 38, par. 25—1 (now 720 ILCS 5/25—1 (West 1992))), and resisting a peace officer (Ill. Rev. Stat. 1991, ch. 38, par. 31—1 (now 720 ILCS 5/31—1 (West 1992))). After a trial in the circuit court of Kane County, the jury returned verdicts of not guilty on the aggravated battery charge and guilty on the mob action and resisting a peace officer charges. The court sentenced defendant to an extended term of six years' imprisonment on the mob action conviction, but did not sentence defendant on the resisting a peace officer conviction.

On appeal, defendant contends that: (1) the State did not prove him guilty of mob action beyond a reasonable doubt; (2) the trial court erred in not properly crediting defendant for presentencing time served; and (3) the cause must be remanded to the circuit court with directions to vacate defendant's conviction of resisting a peace officer, rather than remanded for sentencing on that conviction as the State asserts.

On the night of January 25, 1992, at about 11 p.m., the victim, Mark Rank (Rank), and his wife, Marlene Rank (Marlene), were driving home after dining out. They were driving southbound on State Street in Elgin. As they approached the intersection of State and Wing Streets, they saw a woman, later identified as Carla Clements (Clements), trying to get into a car stopped on State Street. They saw a man, later identified as Joseph Johnson (Johnson), pull Clements away from the car and hit Clements in the face. Rank pulled his car to a stop in front of the other car, south of the intersection. He told Marlene to stay in their car, got out, and walked back toward Johnson and Clements. By then, Johnson was forcing Clements west on Wing Street. Rank approached them and told Johnson to leave Clements alone.

Rank testified that as he attempted to intervene between Johnson and Clements, Johnson hit Rank in the face knocking Rank to the street. The next thing Rank recalled was waking up in a hospital emergency room. He had an injury to his upper lip which was split almost in half and required the services of a plastic surgeon to repair; a lost tooth and four other teeth cracked; a concussion; a laceration on his head; and multiple contusions on his stomach, back, and legs.

Rank did not recall anything after being hit and knocked to the ground by Johnson. He did not see defendant at the scene.

Marlene did not see the beating of her husband. She had stayed in their car, which was parked around the corner out of sight of the beating.

Clements testified for defendant and essentially corroborated Rank's testimony. On the night of January 25, 1992, she was six months' pregnant with Johnson's child. She was at Johnson's apartment in the 621 Wing Street apartment complex near the intersection of Wing and State Streets. The couple had an argument and Johnson hit Clements. She left the apartment and went to a nearby gas station, where she called the police emergency number. Before completing the call, Clements saw Johnson approaching her, dropped the phone, and began walking along State Street. A car with five women in it stopped. The women asked Clements if she needed a ride. Before Clements could get into the car, however, Johnson grabbed her and pulled her away from the car. Johnson then began forcing Clements back toward his apartment by pushing her west along Wing Street. At this point, Rank appeared and tried to intervene. Clements testified that some of Johnson's friends then came running at Rank and attacked him by kicking and beating him as he lay in the street.

Officer Todd Eschman (Eschman), an Elgin police officer, who was on duty on the night in question, testified as follows. He and his partner, Officer Everett Bell (Bell), were proceeding north on State Street in a squad car in response to an emergency call made from the area of Wing and State Streets. As they approached the intersection, they saw Marlene, standing in the street about 40 feet south of the intersection of Wing and State Streets. The officers stopped their squad car and spoke to Marlene, who told them her husband was around the corner trying to break up a fight between a man and a woman. Eschman looked in the direction of the intersection, but could not see around the corner because a building on the southwest corner blocked his view. The intersection was well lit.

The officers then drove the short distance northbound on State Street to its intersection with Wing Street. The intersection is T-shaped with State Street running north and south and Wing Street running west, but not east, from the intersection. Upon reaching the intersection, Eschman saw a group of four or five men on Wing Street just west of State Street. The group was in the turn lane for cars driving eastbound on Wing Street to turn south onto State Street. Officers Eschman and Bell were in uniform. They stopped their squad car so its headlights were pointed directly at the group of men. The squad car's floodlights, red and blue grill lights, and flashing strobe light on the dash were also on.

As he stopped the squad car, Eschman saw four or five men kicking and beating Rank, whose body was lying in the street. After the police arrived, the men beating Rank started to flee. Eschman

saw defendant, the last man to leave, kick Rank in the midsection and then run. Because Eschman had seen defendant kick Rank, Eschman took particular note of defendant.

Eschman further testified that he ran after four of the fleeing men, including defendant, who ran west on Wing Street toward the apartment complex at 621 Wing Street. Eschman was able to describe the clothes which defendant was wearing. Defendant's clothes were different from the clothes worn by at least two of the other fleeing men.

At 621 Wing Street, one of the fleeing men, whom Eschman then recognized as Johnson, ran into an apartment. The other three, including defendant, continued running behind the apartment buildings. Eschman lost sight of them for "a brief second" as they turned a corner, but regained sight of them when he turned the same corner. The three men were running north. Eschman continued to pursue the men and they split up as he gained ground on them.

When the fleeing men split up, Eschman continued to run after defendant. Eschman testified that he did this "[b]ecause he was the last subject I saw kick Mr. Rank, so this last subject I knew for sure was involved in the incident."

Eschman eventually caught up with defendant a little more than a quarter of a mile from where he began chasing defendant. Eschman grabbed defendant, pushed him up against a fence, and told defendant he was under arrest. Defendant's arms were flailing and he continued to try to pull away from Eschman. At one point, Eschman and defendant fell to the ground and defendant continued to struggle with Eschman on the ground. Only after another officer arrived and assisted Eschman was defendant handcuffed and placed under arrest.

Bell, Eschman's partner, accompanied Eschman to the scene of the beating. Bell corroborated Eschman's testimony as far as being called to the scene, encountering Marlene, arriving at the scene of the beating, and observing four or five men beating Rank.

In addition, Bell testified that before chasing the men who were beating Rank, Eschman directed a suspect, Mark Keith, to Bell to detain. That took "a matter of seconds." Bell placed Keith in the squad car. Bell also stated that the men who were kicking Rank took off running in different directions.

Mark Keith (Keith), age 16, testified for defendant as follows. On January 25, 1992, Keith was living in the apartment complex at 621 Wing Street with his mother and brother. On that night, defendant visited Keith in his apartment. Keith and defendant were friends. As Keith and defendant were leaving the apartment to drive defendant home, they heard a commotion from the area of the intersection of

Wing and State Streets. Keith and defendant ran to the intersection to see what was going on. Shortly after Keith and defendant neared the scene where Rank was being beaten, the police arrived. Keith started to run, but had only taken about four steps when Officer Bell yelled at Keith to stop. Keith stopped and Bell arrested him. The police later took Keith to the police station, interrogated him, and detained him for about 3½ hours. The police then released Keith without charging him in any way.

Keith testified that he did not know what defendant did after they began to run. Keith did not get close enough to the beating scene to really determine what was happening or identify anyone who participated. Keith testified that defendant also did not go down to the beating scene and did not participate in the beating.

In addition to her testimony noted above corroborating Rank's testimony, Clements further testified that she was "absolutely positive" that defendant was not one of the men who beat Rank. She only knew defendant through Johnson and had no reason to lie for defendant if he had been involved in the beating.

On cross-examination, Clements at first testified that she did not see Johnson hit Rank. However, upon further questioning, Clements changed her testimony and testified that Johnson did hit Rank. Clements also acknowledged that she had signed written statements on two occasions a few days after the beating incident and that in neither statement did she state that defendant was not involved in the beating.

Gary Neal, an Elgin police officer, testified as a rebuttal witness for the State. Neal interviewed Clements on January 28, 1992, at the Elgin police headquarters. During the interview, Clements stated that she did not know whether defendant was involved in the beating of Rank, because she did not know the persons at the scene. Neal testified that, on the same date, Clements wrote out a statement which did not mention defendant.

Neal interviewed Clements again on January 29, 1992, and again asked Clements whether she knew if defendant was involved in Rank's beating. Clements again responded that she did not know the men who beat Rank and specifically did not know whether defendant was involved. Clements again wrote a statement which did not mention defendant.

Defendant's first contention on appeal is that the State failed to prove him guilty of mob action beyond a reasonable doubt. Defendant argues that inconsistencies in testimony given by Officers Eschman and Bell, and lack of corroboration as to Eschman's testimony, require a finding of not guilty under the reasonable doubt standard.

Specifically, defendant maintains that Bell's testimony belies Eschman's testimony that Eschman saw defendant participate in the beating of Rank and then chased and caught defendant while virtually never losing sight of him. Defendant points to Bell's testimony that upon arriving at the scene, Eschman first directed his attention to Keith and directed Keith to Bell for detention. Defendant also asserts that Bell's testimony conflicts with Eschman's as to what direction or directions the men who were beating Rank fled. Finally, defendant argues that the testimony of Keith and Clements either contradicts or fails to corroborate Eschman's testimony.

Our supreme court recently set out the principles for reviewing challenges to the sufficiency of the evidence when the reasonable doubt standard applies. The court stated:

"When faced with a challenge to the sufficiency of the evidence, the reviewing court applies the reasonable doubt standard as set forth in *People v. Collins* (1985), 106 Ill. 2d 237, 261. This standard, derived from *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, does not require the court to ' "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." ' (Emphasis in original.) [Citation.] Rather, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261; see also *People v. Pintos* (1989), 133 Ill. 2d 286.) *** The standard gives 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' (*Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; see *People v. Young* (1989), 128 Ill. 2d 1, 51.) Therefore, this court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses (*Young*, 128 Ill. 2d at 51), and will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt (*Collins*, 106 Ill. 2d at 261)." *People v. Campbell* (1992), 146 Ill. 2d 363, 374-75.

■ Here, defendant asserts that the State did not prove beyond a reasonable doubt that he participated in the beating of Rank and that therefore the State did not prove beyond a reasonable doubt that he was guilty of mob action. We conclude that, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that defendant participated in the beating of Rank and that defendant therefore was guilty of mob action beyond a reasonable doubt.

The conflicts and inconsistencies alleged between the testimony of Officers Eschman and Bell do not require a reversal. Under the above principles, the resolution of the conflicts and inconsistencies in the testimony is within the province of the jury. Conflicts and inconsistencies do not necessarily establish a reasonable doubt, and a reviewing court should not substitute its judgment for that of the fact finder on these questions. (*People v. Nally* (1991), 216 Ill. App. 3d 742, 767-68, *appeal denied* (1991), 142 Ill. 2d 661.) Even when there is other evidence in the record which, if believed, might have led to a different verdict, a reviewing court should not reverse a jury verdict based on substantial and credible evidence unless there is a grave doubt of guilt. (*People v. Mendoza* (1991), 208 Ill. App. 3d 183, 204.) In this case, the State's evidence, in the form of Eschman's testimony, was sufficient to prove defendant guilty of mob action beyond a reasonable doubt. Although the jury heard Bell's testimony, which may have conflicted with or been inconsistent with Eschman's, it chose to believe Eschman's testimony. In view of Eschman's clear and positive testimony, we cannot say that Bell's testimony raised a grave and substantial doubt of defendant's guilt.

The testimony of Keith and Clements also does not require a reversal. Under the above principles, credibility findings are clearly within the province of the trier of fact. Here, the jury apparently found the testimony of Eschman more credible than that of Keith or Clements as to defendant's participation in the beating of Rank. We cannot say that the jury finding that Eschman's testimony was credible would be so improbable, unreasonable, or unsatisfactory as to require reversal.

Finally, the fact that Eschman's testimony was uncorroborated does not require a reversal. The positive testimony of a single witness is sufficient to convict beyond a reasonable doubt. (*People v. Novotny* (1968), 41 Ill. 2d 401, 411.) In this case, the record shows that Eschman's testimony was clear and positive. Accordingly, we cannot say that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt simply because it was uncorroborated.

For the above reasons, we find that the State proved that defendant was guilty of mob action beyond a reasonable doubt.

Defendant next contends, and the State concedes, that he is entitled to credit for time served awaiting trial against his sentence. Because the record is silent as to how many days of credit defendant is entitled to, defendant requests that we instruct the circuit court to award him 139 days.

Under section 5—8—7(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—7(b) (now 730 ILCS 5/5—8—

7(b) (West 1992))), a defendant is entitled to credit for any part of any day he is in custody "as a result of the offense for which the sentence was imposed" from the date of his arrest through, and including, the day of sentencing. *People v. Donnelly* (1992), 226 Ill. App. 3d 771, 778-79.

Here, the record shows that defendant was arrested and placed in custody for mob action and resisting a peace officer on January 25, 1992. Defendant remained in custody for those offenses until he was sentenced on June 12, 1992. For this time served, we calculate that defendant is entitled to 140 days of credit against his sentence. This calculation reflects credit for the days of defendant's arrest and sentencing.

■ Because defendant was entitled to 140 days of credit for time served, and because the record does not show whether defendant received this credit, the cause is remanded to the circuit court with directions to grant defendant credit for up to 140 days against his sentence for time served. If defendant was previously credited any of this time served, the circuit court should deduct the previous credit from the 140 days to which defendant is entitled.

The final issue before us is whether we must remand this case to the circuit court for sentencing on the resisting a peace officer conviction. The trial court, without explanation, did not impose a sentence on the resisting a peace officer conviction.

The State contends that the cause must be remanded for sentencing on the unsentenced conviction. The State argues that where, as here, a court convicts a defendant of two or more offenses that contain different elements and are not lesser-included offenses, but did not impose a sentence on one of the offenses, remand for entry of a sentence is required.

Defendant acknowledges that under Supreme Court Rule 366(a) (134 Ill. 2d R. 366(a)) where multiple convictions are otherwise affirmed a reviewing court may review a conviction for which no sentence was imposed and remand for sentencing on that conviction. However, defendant argues that the State's position that remand for sentencing is required departs from established case law and cites *People v. Thoms* (1977), 50 Ill. App. 3d 398. Defendant maintains that *Thoms* requires a reviewing court to vacate an unsentenced conviction. Alternatively, defendant requests that, if we remand for sentencing on the unsentenced conviction, we order the circuit court to impose a concurrent sentence and credit defendant's presentencing time served against the sentence.

Defendant's argument that a reviewing court must vacate an unsentenced conviction is unpersuasive. Our supreme court has

clearly stated that a reviewing court is not required to vacate an unsentenced conviction even when a defendant requests that the conviction be vacated. (*People v. Flores* (1989), 128 Ill. 2d 66, 95.) In addition, *Thoms*, the case relied on by defendant, is "no longer applicable" in view of *People v. Scott* (1977), 69 Ill. 2d 85. *People v. Jacobs* (1987), 154 Ill. App. 3d 211, 212-13.

Several decisions of our supreme court have addressed issues similar to the issue presented in this case. In *People v. Lilly* (1974), 56 Ill. 2d 493, the issue was whether the court had the authority to vacate an unsentenced conviction for which the trial court should not have entered judgment on the verdict. The State argued that defendant could not appeal the unsentenced conviction because it was not a final judgment. (56 Ill. 2d at 495-96.) The court concluded that it had the authority to vacate the unsentenced conviction under Supreme Court Rule 366 (134 Ill. 2d R. 366) noting that "this case is properly before us on appeal with regard to the defendant's claim as to his [sentenced] conviction." 56 Ill. 2d at 496.

In *People v. Scott* (1977), 69 Ill. 2d 85, defendant was convicted of four different offenses including rape and aggravated kidnapping. After concluding that the aggravated kidnapping offense merged into the rape offense, the trial court imposed sentences on all the convictions except the aggravated kidnapping conviction. (69 Ill. 2d at 86.) Defendant appealed contending (1) that some of the sentences were excessive; and (2) that the aggravated kidnapping conviction, the unsentenced conviction, must be reversed because it arose out of the same conduct as the rape conviction. (*People v. Scott* (1977), 45 Ill. App. 3d 487, 488.) The appellate court affirmed the sentences and remanded the cause to the circuit court for the imposition of a sentence on the unsentenced conviction.

The supreme court addressed the question of whether "the appellate court was empowered to remand the cause for imposition of sentence" on the unsentenced conviction. (*Scott*, 69 Ill. 2d at 87.) The court held that the appellate court "acted within the scope of its powers" under Supreme Court Rule 366 (134 Ill. 2d R. 366). (69 Ill. 2d at 88.) The court followed *Lilly* in finding Rule 366 applicable to criminal appeals even though Rule 366 itself was "not specifically made applicable to criminal appeals." (69 Ill. 2d at 88.) The court stated that imposing sentence on the unsentenced conviction would "complete the circuit court's order and render judgment final." 69 Ill. 2d at 89.

In *People v. Dixon* (1982), 91 Ill. 2d 346, defendant was convicted of armed violence, aggravated battery, mob action, and disorderly conduct, but only sentenced on the armed violence and aggravated

battery convictions because the trial court held that the other offenses merged into the armed violence and aggravated battery offenses. The appellate court reversed the armed violence conviction, affirmed the aggravated battery conviction, and refused to remand for sentencing on the unsentenced convictions, mob action and disorderly conduct. 91 Ill. 2d at 349.

After determining that defendant was not denied a fair trial, the supreme court addressed the question of whether the appellate court should have remanded for the imposition of sentences on either of the unsentenced convictions. The court reviewed *Lilly* and *Scott* and concluded that the issue before it was different than those cases because defendant in *Dixon* did not appeal from the unsentenced convictions. (91 Ill. 2d at 353.) Noting that the charges all arose from a series of separate but closely related acts, the court held that the appellate court had the authority to remand the cause for sentencing on the unsentenced convictions under Supreme Court Rule 615(b)(2) (134 Ill. 2d R. 615(b)(2)). The court stated:

> "Since the appeal was properly before the appellate court with regard to defendant's convictions for armed violence and aggravated battery, and the failure to impose sentences upon the two unappealed convictions had been intimately related to and 'dependent upon' the appealed convictions within the meaning of Rule 615(b)(2), we believe [the appellate] court was authorized to remand the cause for imposition of sentence." 91 Ill. 2d at 353-54.

■ Based on the principles set forth in these cases, *Lilly, Scott*, and *Dixon*, we conclude that we have the authority to remand for sentencing on defendant's unsentenced conviction in this case. Here, the trial court sentenced defendant on his mob action conviction, but did not sentence defendant on his conviction of resisting a peace officer. Defendant appealed his mob action conviction, and the State raised the issue of remanding for sentencing on the unsentenced conviction. Although this case is unlike *Lilly* and *Scott* in that defendant here did not appeal from the unsentenced conviction, this case is like *Dixon* because the unsentenced conviction was intimately related to and dependent upon the sentenced conviction. If defendant had not committed the offense of mob action, it is unlikely that the police would have pursued him and placed him in a position to resist his arrest by a peace officer. We therefore remand the cause to the circuit court for the imposition of a sentence on the resisting a peace officer conviction.

We agree with defendant that he should receive credit for his presentencing time served against any sentence the trial court imposes on the resisting a peace officer conviction. However, we

decline defendant's request to instruct the trial court to impose a concurrent sentence. In making its sentencing determination, the trial court should be guided by section 5—8—4 of the Uniform Code of Corrections, which governs concurrent and consecutive sentences (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4 (now 730 ILCS 5/5—8—4 (West 1992))).

For the aforementioned reasons, we affirm the conviction of mob action and remand the cause for crediting of defendant's presentencing time served and sentencing on the resisting a peace officer conviction.

Affirmed and remanded with directions.

INGLIS, P.J., and McLAREN, J., concur.