No. 2--01--1167 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, )

) 

v. ) No. 00--CF--838

)

ANGEL RAMOS, ) Honorable

) George J. Bakalis,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Following a bench trial, defendant, Angel Ramos, was found guilty of one count of aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 2000)) and two counts of aggravated discharge of a firearm (720 ILCS 5/24--1.2(a)(2) (West 2000)).  After its finding of guilty, the trial court merged the two counts of aggravated discharge of a firearm into the one count of aggravated battery with a firearm and entered a conviction and sentenced defendant on the latter count alone.  Defendant appeals, arguing that (1) the trial court erred in denying his pretrial motion to suppress the out-of-court identifications of defendant by witnesses Zacharias Carpenter and Michael Miller; (2) his trial counsel provided ineffective assistance of counsel by failing to introduce certain evidence at the suppression hearing; and (3) he was not proved guilty beyond a reasonable doubt of the crimes charged.  The State argues
 
for the first time in its appellee's brief that the trial court erred in merging the two counts of aggravated discharge of a firearm into the one count of aggravated battery with a firearm.  We affirm. 

At about 1:30 a.m. on April 7, 2000, Isaac Bailey, Zacharias Carpenter, and Michael Miller were riding in Miller's Buick Regal in Aurora when the passenger in a car that pulled alongside them fired several shots from a handgun into the Regal.  Bailey, the driver, was shot in the shoulder.  He and his companions contacted the police and gave descriptions of the assailant and the car, the  Neon in which he was riding.  Dispatch conveyed the descriptions to officers in the area.  Several minutes later and several blocks from the scene of the shooting, a sheriff's deputy identified a Neon car that matched the description given by Bailey and the others.  The officer pulled over the car, which contained two "Hispanics"--defendant and Jose Ramirez.  Carpenter and Miller were conveyed to the scene, where they identified defendant as the shooter.  Defendant was arrested. 

Defendant filed a motion to suppress the out-of-court identifications made by Carpenter and Miller.  
At the suppression hearing, defendant called Aurora police officers Brian Pierce and Jeffrey Talley, who arrived at the scene shortly after the shooting. 

[Nonpublishable material under Supreme Court Rule 23 removed here.]

Although the trial court analyzed the identification procedure as a showup, it observed that the procedure was not a showup 
per se
 because Miller and Carpenter were shown two suspects and asked to identify whether either was the assailant.   After hearing the testimony, the court concluded that defendant failed to demonstrate that the showup was unnecessarily suggestive or conducive to irreparable misidentification.

 Defendant subsequently filed a motion to quash arrest and suppress evidence, which the court denied following an evidentiary hearing.  At trial, the parties stipulated to the admission of the testimony given by Kane County sheriff's deputy Brian Demeter at the hearing on defendant's motion to quash arrest and suppress evidence.

The parties stipulated to the admission of Officer Pierce's testimony from the hearing on the motion to suppress identification.

[Nonpublishable material under Supreme Court Rule 23 removed here.]
 
After Carpenter, Miller, and Bailey testified, 
the parties then stipulated that police recovered three fired .32-caliber shell casings from the scene of the shooting and two spent .32-caliber bullets from the driver's door of the Regal.  The parties further stipulated to Bailey's gunshot wound to the shoulder.  The State introduced photographs of the Regal, which showed a shattered front driver's side window and two bullet holes in the front driver's side door. 

The State then rested its case.  The defense's case consisted of the following stipulated conversation between Miller and an Aurora police officer regarding Miller's identification of defendant:

"OFFICER: Now, I understand a short time after you guys were still there, the police ended up finding the car.  What happens then?

MILLER: I guess they pulled him over and they brought us to the scene where they had them.  They told us before we got there, can we--you know, what you call it, identify them, identify the car.  We told them definitely we can do that, and so they took us there.  We looked at the car.  When we seen [
sic
] the car, we knew definitely that had to be them because that was the exact same car.  Then I guess they took us around the corner and got the people out of the van that was there and, you know what I'm saying, one of them, I guess the one that shot, he had like a bandana.  I guess he put it on after, you know what I'm saying?  I don't know why, but he put it on because he didn't have it on when he shot.  And I was like, you know what I'm saying, can he remove it, because he had short hair.  If he removed the bandana, I would know if it was him or not.  And he removed it and I was like yeah, it was definitely him.

OFFICER: So the guy took off the bandana when you saw him

and you're 100 percent positive that is the guy that shot the gun?

MILLER: All I'm saying, I put it together.  He had a yellow shirt.  I thought it was white because it was dark, but that was him."  

The court found defendant guilty on all three counts, noting that the "crux" of the case was the identifications of defendant by Carpenter and Miller.  The court entered a conviction and sentenced defendant only on the one count of aggravated battery with a firearm, finding that the two counts of aggravated discharge of a firearm were merged into the aggravated battery conviction.  

Defendant filed a motion and an amended motion for a new trial, arguing that (1) the trial court erred in declining to suppress Carpenter's and Miller's identifications because the evidence at the hearing showed that they were the result of "an unduly and unnecessarily suggestive 'show-up' conducive to a mistaken identification" and thus violated due process, (2) his trial counsel provided ineffective assistance of counsel by failing to introduce evidence at the hearing on the motion to suppress identification "that Defendant was wearing yellow and black clothing at the time [of his arrest], rather than yellow and white or light colored clothing as described by the alleged victims of the shooting," and (3) defendant was not proved guilty beyond a reasonable doubt of the crimes of aggravated discharge of a firearm and aggravated battery with a firearm.  

At the hearing on the motion, the parties stipulated that defendant was wearing a black, long-sleeved shirt underneath a  yellow T-shirt bearing a Tommy Hilfiger logo when he was arrested.  Defendant testified at the hearing that he was wearing the black shirt when he was arrested and had worn it for several hours before the arrest.  The trial court denied the motion for a new trial.  

On appeal, defendant reiterates the arguments he brought in his motion for a new trial.  He argues, first, that the trial court erred in denying his motion to suppress Miller's and Carpenter's showup identifications.  

Illinois courts have long held that an immediate showup identification near the scene of the crime is proper police procedure.  See, 
e.g.
, 
People v. Lippert
, 89 Ill. 2d 171, 188 (1982); 
People v. McKinley
, 69 Ill. 2d 145, 152 (1977); 
People v. Manion
, 67 Ill. 2d 564, 570 (1977).  

"Although one man show-ups are generally condemned, they have been consistently upheld when they are justified by the circumstances.  One of the circumstances in which a show-up has been justified by the court is when it is necessary to facilitate a police search for the real offender, and the Supreme Court has consistently upheld prompt identification of a suspect by a witness or victim near the scene of the crime where they foster the desirable objectives of a fresh, accurate, identification, which may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing offender while the trail is still fresh."  
People v. Hicks
, 134 Ill. App. 3d 1031,  1036 (1985).    

The weight to be given identification evidence is presumptively a question for the trier of fact.  
People v. Moore
, 266 Ill. App. 3d 791, 796 (1994).  Only where a pretrial encounter resulting in an identification is "unnecessarily suggestive" or "impermissibly suggestive" so as to produce "a very substantial likelihood of irreparable misidentification" is evidence of that and any subsequent identifications excluded by operation of law under the due process clause of the fourteenth amendment.  
Moore
, 266 Ill. App. 3d at 796-97, citing 
Neil v. Biggers
, 409 U.S. 188, 196-97, 34 L. Ed. 2d 401, 409-10, 93 S. Ct. 375, 380-81 (1972).  

The due process analysis has two steps.  First, the defendant must prove that the confrontation was so unnecessarily suggestive and conducive to irreparable misidentification that he was denied due process of law.  If the defendant meets this burden, the burden falls to the State to establish that the identification is independently reliable.  
Moore
, 266 Ill. App. 3d at 797.  The factors to be weighed in determining the independent reliability of the identification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.  
Moore
, 266 Ill. App. 3d at 797.  The standard of review of a trial court's denial of a motion to suppress a showup identification is whether the trial court's decision was manifestly erroneous.  
Moore
, 266 Ill. App. 3d at 796.

     Defendant argues at length that the trial testimony of Carpenter, Miller, and Bailey demonstrates that the identification procedures used by the police were unnecessarily suggestive and therefore violated due process.  
However, a defendant cannot challenge the propriety of the trial court's denial of the defendant's pretrial motion to suppress by citing subsequent trial testimony where the defendant failed to renew his objection at trial.  
People v. Brooks
, 187 Ill. 2d 91, 127-28 (1999).  In this case defendant did not renew his objection at trial.
  
Therefore, our review of this issue is limited to the evidence presented at the suppression hearing. 

We agree with the trial court that defendant did not meet his burden of showing that the showup procedure was so unnecessarily suggestive and conducive to irreparable misidentification that defendant was denied due process of law.  Officer Pierce testified that Miller and Carpenter were conveyed in a squad car to the location where police had stopped the Neon containing defendant and Ramirez.  En route, Pierce directed Miller and Carpenter to assess the suspect's appearance independently of each other.  Miller and Carpenter did not discuss the features of the assailant or the suspect car while they rode with Pierce.  When the three arrived at the scene, defendant and Ramirez were standing near the Neon.  Pierce stopped about 100 feet from the suspects and shined the lights of his squad car on them.  Miller and Carpenter immediately identified the Neon as the car involved in the shooting.  When Pierce asked whether either of the two suspects was the assailant, Carpenter immediately identified defendant.  Miller commented that defendant resembled the assailant.  Miller then remarked that he remembered the assailant having a bald head or short hair and, therefore, requested that defendant remove the bandana that he was wearing.  When defendant did so, Miller immediately identified defendant as the assailant.

The record does not clearly establish that the showup was unnecessarily suggestive.  Pierce ensured that Miller and Carpenter viewed defendant and Ramirez in adequate lighting and from a reasonable distance.  Moreover, defendant was standing beside another "Hispanic" male when Miller and Carpenter were asked to identify the assailant.  That this was a two-person rather than a one-person showup enhanced the reliability of the procedure.  See 
People v. Broadnax
, 177 Ill. App. 3d 818, 833 (1988).  

[Nonpublishable material under Supreme Court Rule 23 removed here.]
 
Further, we do not agree with defendant that the suggestiveness of the identification procedure was increased by his standing near a car that "roughly matched" the description of the car involved in the shooting.  
The victims all described the car involved in the shooting as a pink Dodge Neon.  Officer Pierce described the car stopped by police as a Dodge Neon that was pinkish in color.  There indeed was a match, then, at least with respect to the make, model, and color of the car, which were the only details given about the cars at the suppression hearing.  If the match was, as defendant claims, "rough," then it was due to details that were not disclosed at the suppression hearing.  We recognize that, upon seeing the Neon before they observed Ramirez and defendant, Carpenter and Miller both exclaimed, "That's the car!"  However, this does not suggest that their subsequent identification of defendant was based solely on their identification of the Neon.  The contrary, in fact, was established by Miller's hesitation in identifying defendant, which showed not a rush to identify defendant but a desire to suspend judgment until more of defendant's physical features were viewed.     

We also reject defendant’s contention that Miller's identification was dubious because he identified defendant only after police removed defendant's bandana.  The level of certainty demonstrated by a witness in an out-of-court identification pertains to the independent reliability of the identification, which is examined only if the identification procedure is found to have been unnecessarily suggestive.  See 
People v. Garcia
, 97 Ill. 2d 58, 73 (1983); 
Moore
, 266 Ill. App. 3d at 797; 
People v. Coleman
, 203 Ill. App. 3d 83, 91 (1990).
 
 Based on the evidence at the suppression hearing, we determine that the trial court's decision to deny defendant’s motion to suppress the identification evidence as unnecessarily suggestive was not manifestly erroneous.

Defendant next argues that his trial counsel was ineffective for failing to introduce certain evidence at the suppression hearing.  Defendant's brief-in-chief is replete with citations to the trial testimony of Miller and Carpenter.  Defendant claims that their testimony shows the suggestiveness of the showup and the unreliability of their identifications of defendant.  Accordingly, defendant claims that his counsel was ineffective for failing to call Miller and Carpenter as witnesses at the hearing on the motion to suppress identification.  

Defendant, however, did not include this argument in either the motion or amended posttrial motion he filed.  The only ineffectiveness argument that defendant included in his motions respecting the suppression hearing concerned counsel's failure to introduce evidence that defendant was wearing a black, long-sleeved shirt under a yellow T-shirt before and at the time of his arrest.  A defendant's failure to include an issue in a posttrial motion results in a waiver of that issue on appeal.  
People v. Enoch
, 122 Ill. 2d 176, 186-87 (1988).  We note that, because the attorney who represented defendant at trial did 
not
 also draft the posttrial motion, posttrial counsel would not have faced a conflict of interest in claiming the ineffectiveness of trial counsel.  We therefore apply the waiver rule to posttrial counsel's failure to include the ineffectiveness claim in defendant's posttrial motion.  See 
People v. Keener
, 275 Ill. App. 3d 1, 5-6 (1995).  Accordingly, we will address only the claim that trial counsel erred in failing to produce evidence of what defendant was wearing on the night he was arrested.

Illinois courts address ineffective assistance of counsel claims under the two-prong test established in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and 
People v. Albanese
, 104 Ill. 2d 504, 526-27 (1984).  Under 
Strickland
, a defendant must prove (1) that defense counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for this substandard performance, the result of the proceeding would have been different.  
People v. Alvine
, 173 Ill. 2d 273, 293 (1996).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  Mere conjecture and speculation is not sufficient to establish this probability.  
People v. Gosier
, 165 Ill. 2d 16, 24 (1995).  Because a defendant's failure to establish either part of the 
Strickland
 test will defeat an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.  Accordingly, a court considering a claim of ineffective assistance "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

We need not decide whether defense counsel's failure to introduce evidence of what defendant was wearing on the night he was arrested fell below professional standards because we find  that defendant suffered no prejudice from that failing.  According to Pierce and Talley, Carpenter and Miller described the assailant as wearing a white or light-colored shirt.  Defendant suggests  that defense counsel should have sought to discredit Carpenter and Miller with evidence that defendant was wearing a black, long-sleeved shirt under a yellow T-shirt at the time of the shooting.  However, because this evidence is suggestive only of the level of accuracy in the witnesses' descriptions of the assailant, it would have had no relevance in determining the suggestiveness of the identification procedure used by police in this case.  Rather, it would have pertained to the independent reliability of the identification (see 
Moore
, 266 Ill. App. 3d at 797), which a trial court examines only after finding that the identification procedure was unnecessarily suggestive.  As the showup was not unnecessarily suggestive, there was no prejudice to defendant in defense counsel's failure to introduce evidence relevant only to the independent reliability of the identification.  Therefore, we reject defendant's ineffectiveness claim.

Defendant's next contention is that the State did not prove him guilty beyond a reasonable doubt of the crime of aggravated battery with a firearm.  In reviewing the sufficiency of the evidence used to convict a defendant, a reviewing court does not reweigh the evidence or determine anew the defendant's guilt.  
People v. Young
, 128 Ill. 2d 1, 49 (1989).  Rather, the reviewing court, viewing all of the evidence in the light most favorable to the prosecution, determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Young
, 128 Ill. 2d at 48-49.  Where conflicts exist in the evidence, the trier of fact has the responsibility of weighing the credibility of the witnesses and resolving these conflicts.  
People v. Byron
, 164 Ill. 2d 279, 299 (1995).  Consequently, a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses unless the evidence is "so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of [the defendant's] guilt."  
People v. Abdullah
, 220 Ill. App. 3d 687, 693 (1991).

Defendant's first argument concerns the weight of the identification testimony from Miller and Carpenter.  To reiterate, the factors relevant in assessing the reliability of an identification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.  
Moore
, 266 Ill. App. 3d at 797.  The identification testimony of a single eyewitness is sufficient to sustain a criminal conviction.  
People v. Gonzalez
, 292 Ill. App. 3d 280, 288 (1997).  However, identification testimony will not be deemed sufficient to support a conviction if it is vague or doubtful.  
People v. Rodriguez
, 312 Ill. App. 3d 920, 933 (2000).

Applying the relevant factors, we conclude that Miller's and Carpenter's identifications of defendant were reliable because both witnesses observed defendant for several seconds before he fired at the Regal, both gave accurate, albeit general, descriptions of the assailant to police, and both readily and positively identified defendant as the shooter in a showup that occurred only 20 minutes after the shooting.  

Defendant attacks Miller's identification testimony in several respects. First, defendant questions the truth of Miller's testimony that he did not consume alcohol on the night of the shooting.  Defendant points to Miller's denial that either Carpenter or Bailey was drinking, which conflicted with Carpenter's and Miller's admission that they, in fact, had drunk that evening.  Miller's credibility was a matter for the trial court to assess, and we cannot say that the trial court erred in crediting Miller's identification testimony despite his denials about alcohol usage.

Second, defendant contends that Miller lacked an adequate opportunity to observe the assailant and the car because (1) the area was "dark," according to Miller when he was asked about the lighting conditions on the street where the shots were fired, and (2) Miller observed the assailant for only three or four seconds.  Defendant is mistaken on the latter point: Miller testified that he observed the assailant for 10 seconds before the latter rolled down the window of the Neon and displayed a handgun.  As to his statement that the area was "dark," Miller’s testimony must be considered along with Carpenter’s testimony that the area was "lit up" by streetlights.
  
It was the trial court's province to reconcile this inconsistency and to conclude that Miller had an adequate opportunity to view the assailant. 

Defendant also contends that Miller admitted that he observed only the assailant's hair and shirt before the shots were fired and Miller ducked down.  This is inaccurate; Miller expressly testified that he observed the facial features of the assailant at the time of the shooting. 

[Nonpublishable material under Supreme Court Rule 23 removed here.]

Next, defendant claims that Miller's identification was uncertain because Miller admitted on cross-examination that he was unable to identify defendant as the assailant until defendant removed the bandana he was wearing when arrested.  Defendant infers from this that Miller identified defendant largely on the basis of his hairstyle.  We disagree.  Miller was emphatic on direct examination that he immediately recognized defendant as the assailant when he and Carpenter arrived at the location where defendant and Ramirez were detained.  Moreover, Miller stated on cross-examination that he had the police remove defendant's bandana because he knew "if he took it off, if he had short hair or if his hair--head was bald, it without a doubt was him, a hundred percent."  The trial court could have concluded from Miller's testimony that defendant's hairstyle confirmed what Miller already believed and elevated Miller's belief in defendant's culpability from probability to certainty.  

Defendant's final challenge to Miller's identification testimony rests on the stipulated conversation between Miller and a police officer in which Miller stated that, upon arriving at the location where defendant and Ramirez were detained, he and Carpenter were certain that defendant was the assailant because the Neon was the "exact same car" that was used in the shooting.  When the officer asked if Miller was 100% sure that defendant was the assailant, Miller replied, "All I'm saying, I put it together.  He had a yellow shirt.  I thought it was white because it was dark, but that was him."  Defendant suggests that this exchange reveals that Miller identified defendant solely on the basis of his apparel and the car in which he was riding when stopped.  Defendant's  contention (which, we note, takes substantial liberties with the stipulated conversation) is defeated by Miller's trial testimony that he observed defendant for several seconds before the shooting and that he identified defendant as the perpetrator at the showup based on several factors, including defendant's facial features. 

Defendant also challenges Carpenter's identification testimony on several points.  First, defendant claims that Carpenter's perception was impaired by his admitted consumption of 20 ounces of hard liquor in a one-hour period shortly before the shooting.  We note, first, that the 20-ounce amount was an estimation by Carpenter.  Also, although Carpenter testified that the alcohol made him feel "bubbly," he did not testify as to its effect on his perception.  It was within the province of the trial court as arbiter of Carpenter's credibility to find his identification testimony reliable despite his admitted consumption of alcohol prior to the shooting. 

[Nonpublishable material under Supreme Court Rule 23 removed here.]

Finally, defendant argues that, although Carpenter claimed he was certain in his showup identification of defendant, he was certain "for all the wrong reasons."  Carpenter testified that he identified defendant as the assailant because "it couldn't be a coincidence that the police find the same guy, the same two people in the same colored car with the same white stripe with the same yellow shirt on and they both was [
sic
] Hispanic at that time of night."  Defendant infers from this remark that Carpenter based his identification solely on the fortuity that defendant was wearing apparel that resembled the assailant's and that defendant was riding in a car that resembled the car involved in the shooting.  This is not a fair reading of Carpenter's remarks, which clearly indicate that Carpenter identified defendant as the assailant because, among other factors, defendant was the "same guy" who had shot at the Regal.  

While defendant attacks Miller's and Carpenter's identifications largely on separate grounds, his common complaint with both witnesses is that the descriptions they gave police were  "vague" because there is "nothing distinctive about a Hispanic male having short hair."  It is true that Miller and Carpenter described the assailant only in terms of race, sex, and hairstyle in their interviews with police immediately following the shooting.  However, both Miller and Carpenter testified that they observed the assailant for several seconds before he fired at the Regal, and  Miller expressly testified that he identified defendant on the basis of his facial features.  Giving due deference to the findings of the trial court, we conclude that the trial court rationally could have found that Miller and Carpenter had an adequate basis for their identifications of defendant.

Next, defendant disputes the State's proof that the Dodge Neon stopped by Officer Demeter following the shooting was the car involved in the offense. 

[Nonpublishable material under Supreme Court Rule 23 removed here.]

Although there may have been minor discrepancies in the witnesses' descriptions of the car, it was the trial court's responsibility to weigh these discrepancies.  We cannot say, after reviewing the photographs of the vehicle and the testimony of the witnesses, that the court could not have rationally concluded that the car described by the witnesses was the Dodge Neon later stopped by police.

Last, defendant points to the somewhat scant amount of physical evidence linking him to the shooting.  While acknowledging this, we note the ample consistent identification evidence offered by Carpenter and Miller.  The testimony of a single eyewitness is sufficient to sustain a criminal conviction.  
Gonzalez
, 292 Ill. App. 3d at 288.  For the foregoing reasons, we uphold defendant's conviction of aggravated battery with a firearm.

The State argues that the trial court erred in not entering convictions and imposing sentences on the two counts of aggravated discharge of a firearm, which the trial court found were merged into the one count of aggravated battery with  a firearm.  Defendant argues that the issue is not properly before this court because the State neither raised it in the trial court nor filed a cross-appeal.  We agree with defendant.

The first issue that must be resolved in an appeal is whether the appellate court has jurisdiction.  Supreme Court Rule 604(a) strictly limits the State's right to appeal.  134 Ill. 2d R. 604(a);
 
People v. Beard
, 287 Ill. App. 3d 935, 940 (1997).  Rules adopted by the supreme court are mandatory, not optional, and we are obligated to follow them.  See generally 
People v. Treadway
, 245 Ill. App. 3d 1023, 1027 (1993) (reversed and remanded on other grounds). 

The State claims that we have jurisdiction to entertain the issue it raises  under 
People v. Dixon
, 91 Ill. 2d 346 (1982).  However, the State ignores that 
Dixon
 expressly based its jurisdiction on a narrow exception to Supreme Court Rule 604(a).  134 Ill. 2d R. 604(a).

In 
Dixon
, our supreme court recognized the limitation on the State’s right to appeal and carved out an exception in cases where the vacation of a defendant's conviction on appeal would lead to "mischievous consequences" where "crimes could go unpunished."  
Dixon
, 91 Ill. 2d at 354.  Here, even without remand, defendant does not go unpunished.   T
he only mischievous consequence we need to be wary of here is the State's attempt to seek review of an issue in violation of Supreme Court Rule 604(a).  134 Ill. 2d R. 604(a).  If we were to grant the State’s request, the
 mischief would be amplified by the fact that the State failed to preserve the issue by failing to
 
object below or indicate its disapproval at trial.
  If the State had made a timely objection, defendant would have been on notice of the State’s position and defendant would have had the opportunity to decide whether he wanted to appeal, knowing that on appeal the merged offenses could be reinstated.
  Both the trial court and defendant
 
have been taken by surprise by the State's sudden claim of error.
  See 
People v. Felton
, 108 Ill. App. 3d 763, 770 (1982) (wherein Justice Lindberg specially concurred on the basis of waiver due to the failure of the State to raise any claim of error in the trial court)
.

The distinct factual context of 
Dixon
, wherein jurisdiction was entertained so that a nonfinal, unsentenced conviction could be reinstated after a greater conviction was vacated, provides no authority for this court to consider the merits of the State's claim in this case.  
Dixon
 would apply to this case only if we were to reverse the charge of 
aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 2000)
) as requested by the defendant.  Then the State could have sought a remand for sentencing upon the lesser charges. There appear to be two cases that cite 
Dixon
 in a similar factual context.  Neither of the two cases allowed the imposition of a remand and resentencing without the vacation of the greater offense.
  
People v. Cooper
, 283 Ill. App. 3d 86 (1996); 
People v.  Felton
, 108 Ill. App. 3d 763 (1982)
. 

In 
Cooper
, Justice Greiman dissented, believing that the greater offense should have been reversed for lack of evidence.  Greiman then explained, citing 
Dixon
, that the case should be 
remanded for sentencing on the unsentenced conviction.  Greiman stated: 

"If a reviewing court reverses a conviction on which the sentence was imposed, it can remand for sentencing on a conviction on which no sentence was imposed.   Such process has been approved in
 
People v. Dixon
,
 91 Ill. 2d 346 (1982) ***."
  
Cooper
, 283 Ill. App. 3d at 97 (Greiman, J., concurring in part and dissenting in part).

In 
Felton
, 108 Ill. App. 3d 763, 
the appellate court reversed the greater offense but refused the request of the State to remand for sentencing upon the lesser charge of aggravated battery.  The court interpreted 
Dixon
 to be limited to nonfinal, unsentenced convictions.  Because the trial court vacated the aggravated battery conviction, the conviction was final and not subject to remand for resentencing.  The appellate court considered whether it could or should vacate the order vacating the conviction and remand for sentencing, and it determined that to do so would be an unauthorized extension of the powers of review under Supreme Court Rule 615(b)(2) (73 Ill. 2d R. 615 (b)(2)).
  The 
Felton
 court explained:

"Arguably, when considered in the light of 
People v. Dixon
, Supreme Court Rule 615(b)(2) (73 Ill. 2d R. 615(b)(2)) would permit a reviewing court to set aside the order vacating defendant's conviction for aggravated battery.  It was vacated by the trial court as a lesser included offense of the armed violence conviction which defendant has appealed and was related to and dependent upon it.  In
 
Dixon
, however, and
 
related cases where remandment for sentencing has been authorized, there remained in the trial court an incomplete, nonfinal judgment of conviction upon which to act. [Citations.]  That is not the case here, and we believe it would be an unauthorized extension by this court of our powers of review under Rule 615(b)(2) to so hold."  
Felton
, 108 Ill. App. 3d at 769.

In 
Felton
, the State sought to affirm the greater offense and argued for remand on the aggravated battery conviction as an alternative when the greater offense was vacated.  In view of the 
Felton
 analysis and its refusal to enter a conviction under these circumstances,
 we believe that 
Dixon
 must be narrowly construed as not sanctioning the State to seek review of unappealed and unsentenced convictions when the greater offense has not been reversed and vacated.

Accordingly, because we believe that the State has no authority to seek review of the trial court's decision to merge the two counts of aggravated discharge of a firearm, we will not address the merits of the State’s argument regarding merger.

For the reasons stated above, the judgment of the circuit court of Du Page  County is affirmed.  

Affirmed.

GROMETER, J., concurs.

JUSTICE O'MALLEY, specially concurring:

While I believe that a remand for sentencing on defendant's convictions for aggravated discharge of a firearm would be inappropriate as contrary to the one-act, one-crime rule (see 
People v. King
, 66 Ill. 2d 551, 566 (1977)), I cannot accept the majority's claim, based on a misreading of 
Dixon
, that a remand for sentencing is inappropriate because it is not necessary to ensure that defendant is punished in this case.  As I show below, if the majority's interpretation of 
Dixon
 is correct, then 
Dixon
, interestingly, no more supports its own result than the result the State seeks in this case. 

According to the majority, the supreme court in 
Dixon
 assumed jurisdiction over an unappealed, unsentenced conviction
 so that "a nonfinal, unsentenced conviction could be reinstated after a greater conviction was vacated."  Slip op. at 24.  The court in 
Dixon
, the majority claims, remanded the cause for sentencing on defendant's unsentenced, unappealed conviction only because defendant might otherwise go unpunished.  Slip op. at 24.  This court has no power to remand the cause for sentencing on defendant's unsentenced, unappealed convictions, the argument continues, because we have sustained defendant's conviction and sentence for aggravated battery with a firearm and, hence, defendant is already punished and there is no need for further sentencing.  
Dixon
, the majority emphasizes, must be "narrowly construed as not sanctioning the State to seek review of unappealed and unsentenced convictions when the greater offense has not been reversed and vacated."  Slip op. at 26.  The majority cites two appellate court cases that supposedly join 
Dixon
 in precluding "the imposition of a remand and resentencing without the vacation of the greater offense."  Slip op. at 24-25.

As I understand it, the rule that the majority claims to have derived from 
Dixon
 provides that a reviewing court has no authority to remand a cause for sentencing on an unsentenced, unappealed conviction when (1) the remand is not necessary to ensure that the defendant is punished; or (2) the offense underlying the unsentenced, unappealed conviction is a lesser included offense of a crime that underlies a conviction that the defendant does not challenge or that the court affirms on appeal.     

I agree in part with this.  There is no disputing the proposition that a court cannot lawfully enter convictions on both an offense and its lesser included offense.  See 
People v. Smith
, 183 Ill. 2d 425, 431-32 (1998) (it is improper to enter convictions on both the greater offense and the lesser included offense).  Certainly, this court could not remand this cause for sentencing on defendant's convictions of the aggravated discharge of a firearm if those offenses are in fact lesser included offenses of aggravated battery with a firearm.  However, the majority's rationale for refusing to remand defendant's aggravated discharge of a firearm convictions for sentencing is not that aggravated discharge of a firearm is a lesser included offense of aggravated battery with a firearm.  The majority never analyzes that issue, which requires an examination of the allegations contained in the State's charging instrument.  See 
People v. Baldwin
, 199 Ill. 2d 1, 7 (2002) (Illinois courts follow the "charging instrument" approach in determining lesser included offenses).  Instead, the majority concludes that a remand for sentencing is not appropriate because we have affirmed defendant's conviction and sentence for aggravated battery with a firearm and thus a remand is not necessary to ensure that defendant receives punishment in this case.  

This rationale has no basis in 
Dixon
.  In 
Dixon
, the defendant was convicted of armed violence, aggravated battery, mob action, and disorderly conduct.  The trial court ruled that the convictions of mob action and disorderly conduct merged into the convictions of armed violence and aggravated battery, and the court therefore sentenced the defendant on the latter two convictions alone.  The defendant appealed only from the armed violence and aggravated battery convictions.  The appellate court affirmed the aggravated battery conviction, reversed the armed violence conviction, and refused the State's request that the mob action and disorderly conduct convictions be remanded for sentencing.  
People v. Dixon
, 96 Ill. App 3d 1201 (1981) (unpublished order under Supreme Court Rule 23).   

The defendant and the State both filed cross-appeals in the supreme court.  After rejecting the defendant's argument that his constitutional rights were violated at trial, the supreme court addressed the State's argument that the appellate court erred in refusing to remand the mob action and disorderly conduct convictions for sentencing.   Responding to the State, the defendant argued that the court had no jurisdiction over the convictions of mob action and disorderly conduct because he had not appealed them.  
Dixon
, 91 Ill. 2d at 353.  The court disagreed, citing Rule 615(b)(2), which provides: 

"Powers of the Reviewing Court.  On appeal the reviewing

court may: 

***

(2) set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken."  134 Ill. 2d R. 615(b)(2).

The court reasoned that the appellate court should have remanded for sentencing on the two unappealed convictions because "the appeal was properly before the appellate court with regard to defendant's convictions for armed violence and aggravated battery, and the failure to impose sentences upon the two unappealed convictions had been intimately related to and 'dependent upon' the appealed convictions within the meaning of Rule 615(b)(2)."  
Dixon
, 91 Ill. 2d at 353.  To interpret Rule 615(b)(2) otherwise, observed the court, "could have mischievous consequences."  
Dixon
, 91 Ill. 2d at 354.  That is, had the appellate court vacated both the aggravated battery and armed violence convictions yet refused to remand for sentencing on the unappealed convictions, then "it is conceivable that the crimes could go unpunished."  
Dixon
, 91 Ill. 2d at 354.  Accordingly, the supreme court vacated the disorderly conduct and armed violence convictions
(footnote: 1) but remanded the cause with directions for the trial court to impose a sentence on the mob action conviction to run concurrently with the sentence on the aggravated battery conviction.  
Dixon
, 91 Ill. 2d at 356.

Dixon
 nowhere suggested that the power to remand a cause for sentencing on an unsentenced, unappealed conviction depends on whether the remand is necessary to insure that the defendant is punished.  The text of Rule 615(b)(2) contains no such condition; it provides that a court has jurisdiction over any proceeding that is "dependent upon the judgment or order from which the appeal is taken."  134 Ill. 2d R. 615(b)(2).  Rule 615(b)(2) was the sole authority that the supreme court in 
Dixon
 relied on in refuting the defendant's argument that the court had no power to remand the cause for sentencing on the defendant's unsentenced, unappealed conviction
.  Having found that the rule authorized the remand, the court proceeded to note that, if a remand for sentencing on an unappealed, unsentenced conviction was never permissible, then in some instances a defendant whose remaining convictions were reversed on appeal might escape punishment.  However, nowhere does 
Dixon
 suggest that remanding the cause for sentencing on an unsentenced, unappealed conviction is appropriate 
only
 if necessary to ensure that the defendant receives punishment in the case.  The majority confuses a beneficial effect of Rule 615(b)(2) with the scope of the rule.        

Dixon
's outcome itself flatly defies the majority's  characterization.  In 
Dixon
, the supreme court remanded for sentencing on the defendant's unsentenced, unappealed conviction of mob action despite having affirmed the defendant's conviction of and sentence for aggravated battery.  Thus, the court remanded the cause for sentencing on the defendant's unsentenced, unappealed conviction even though the affirmance of the aggravated battery conviction ensured that the defendant would be punished even without a remand.  Therefore, if the majority is correct that 
Dixon
 somewhere stated that a remand for sentencing on an unsentenced, unappealed conviction is appropriate only where the defendant would otherwise go unpunished, then 
Dixon
 flouted its own holding.  The majority accuses the State of seeking to do mischief, but in reality it is not the State that has portrayed 
Dixon
 as a legal oddity.  In 
Dixon
's wake 
this district has shown no qualms about remanding a cause for sentencing on an unsentenced, unappealed conviction even though other convictions and sentences in the case were affirmed; consequently, a remand for sentencing on the unappealed conviction was not necessary to ensure that the defendant was punished.  See, 
e.g.
, 
People v. Baldwin
, 256 Ill. App. 3d 536, 545 (1994); 
People v. Lucien
, 109 Ill. App. 3d 412, 420-21 (1982).

Neither of the two appellate court decisions cited by the majority supports its peculiar notion that Rule 615(b)(2) does not permit a reviewing court to remand for sentencing on an unsentenced, unappealed conviction unless necessary to ensure that the defendant is punished.  In 
Cooper
, the court refused to remand for sentencing on the unappealed conviction, having agreed with the trial court that the offense underlying it was a lesser included offense of the offense underlying the appealed conviction, which the appellate court affirmed.  See 
Cooper
, 283 Ill. App. 3d at 93.  
Cooper
 nowhere acknowledged the notion that a remand for sentencing on an unsentenced, unappealed conviction is appropriate only where necessary to ensure that the defendant is punished.   

Felton
 serves the majority no better.  In 
Felton
, the reason the appellate court refused the State's request for a remand for sentencing is that the conviction for which the State sought a sentence had been vacated below, the trial court having determined that the underlying offense, aggravated battery, was a lesser included offense of armed violence, on which the defendant's other conviction was based.  The appellate court explained that a remand for sentencing on the aggravated battery offense was impossible because "there remain[ed] no incomplete judgment in the trial court upon which sentence [might] be entered."  
Felton
, 108 Ill. App. 3d at 769.  The court distinguished 
Dixon
, where "there remained in the trial court an incomplete, nonfinal judgment of conviction upon which to act."  
Felton
, 108 Ill. App. 3d at 769.  Here, unlike in 
Felton
, there remain unsentenced judgments of conviction upon which sentences may be entered.  Therefore, the majority’s reliance on 
Felton
 is misplaced.  

FOOTNOTES
1:  
The State did not challenge the appellate court's reversal of the armed violence conviction and conceded that the disorderly conduct conviction merged into the mob action conviction.