No. 2-21-0196
Order filed April 7, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF:<br>HILARY BAHE IANNUZZI, | ) ) ) | Appeal from the Circuit Court<br>of Kane County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 18 D 1131 |
| JARED CHARLES IANNUZZI, | ) ) ) | Honorable<br>Christine A. Downs, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) The trial court did not err in classifying various pieces of property. Contrary to the appellant's contention, the court did find the Emerald property to be a marital asset; further, the court properly found the Como property to be a nonmarital asset. (2) The trial court did not impermissibly rule on equitable ownership interests in favor of third parties without first joining those parties to the case. No one's interests, other than those of Jared and Hilary, were adjudicated. Trial court affirmed.

¶ 2   In his appeal of the trial court's Judgment of Dissolution of Marriage, respondent, Jared Iannuzzi, raises three issues. Two issues involve the trial court's classification of various pieces of real estate as non-marital property. The third issue involves the trial court's finding of equitable

ownership interests in parties that had not been joined to the case as necessary parties. We affirm the trial court's judgment.

¶ 3                                 I. BACKGROUND

¶ 4      The marriage of Jared and petitioner, Hilary Iannuzzi, lasted from October 10, 2008 until the trial court's judgment of dissolution was entered on December 23, 2020. During the course of their marriage, Jared and Hilary, along with Hilary's brother, Ryan Bahe, invested in rental properties together. Hilary and Ryan were each a 50% owner of Bahe, Inc., an Illinois corporation involved in real estate investment. Bahe was incorporated before the marriage of Hilary and Jared. Bahe does not own title to any real estate but acts a management business for various investment properties. Ryan works as a real estate agent and has his paychecks made payable to Bahe, Inc. and deposited into Bahe's Chase checking account.

¶ 5      Hilary and Ryan also used a Heartland Bank account to pay Bahe expenses. While the account was in Ryan's name only, Hilary accessed it online using Ryan's username and password. Rental income from properties held in Hilary's, Jared's, and Ryan's names were deposited into this account. In addition, starting in 2008, Hilary agreed to loan money to Bahe by depositing funds from her paycheck directly into the Heartland account, eventually reaching $600 per month in 2013. She made these loans because rents were not covering expenses.

¶ 6      Two investment properties are the subject of this appeal. The first contested property is located at 874 Emerald Drive, Pingree Grove, Illinois (Emerald Property). Jared testified that he really did not remember when he purchased the property, but it cost roughly $65,000. Jared's name appeared on the title to the property. When asked if it were a Bahe, Inc., property, Jared responded, "I'm not sure how they consider it, but it's an investment property." Jared did not pick out the property for purchase; Ryan brought it to their attention.

¶ 7    Jared had failed to obtain financing for the property, so he paid cash. He thought that half of the funds came from his joint account with Hilary, but he could not remember if one-third of the funds came from Ryan and one-third from Bahe, Inc. Jared had little to do with the property and was not familiar with the rent, taxes, occupancy, or association dues.

¶ 8    Ryan testified that he thought that Bahe owned the property, even though Bahe was not named on the title, because of "[t]he understanding that Hilary and I had when we purchased the properties." He thought that the property cost $60,000, but he had no idea where the purchase funds came from. Rent from the property is deposited in the Heartland account and is used for paying for upkeep, taxes, insurance, and association fees.

¶ 9    Hilary testified that funds for the purchase of the Emerald property came one-third each from Ryan, Bahe, and an inheritance that she had received. The property was listed on Jared and Hilary's joint tax returns as rental property. Rent from the property was deposited in the Heartland account, and Bahe managed the property. Even though the property was purchased by Jared, it was intended to be a Bahe property.

¶ 10    The trial court found that the property was acquired as an investment property during the marriage and was, therefore, marital. Further, the marital estate paid one-third of the down payment, according to the testimony of both parties and Ryan. Ryan and Behe, Inc. each had a one-third interest in the property. The court also found that Hilary failed to overcome her burden of proving that the one-third of the down payment came from a nonmarital inheritance, "and the 1/3 interest in 874 Emerald is found to be marital."

¶ 11    The second property is 1012 Como Circle in Hampshire, which was purchased by Hilary in July 2013 and titled in her name. She had put down $2000 interest money on the property, which had a contract price of $95,000. The property was listed on Jared and Hilary's joint tax

returns as rental property. Hilary did not remember where the $2000 that she provided for earnest money came from, but she later admitted that it originated from her personal checking account. Hilary claimed that the remainder of the purchase price came one-half from Bahe and one-half from Morgan and Jeff Szymonik, Hilary's sister and brother-in-law. Rental income from the property was placed in the Heartland account, and taxes and other expenses were also paid from that account. There were multiple deposits totaling just over $100,000 made to Hilary's checking account leading up to the Como closing; these deposits were from Ryan's Heartland account. There was a wire transfer of $89,000 from Hilary's private account to First American Title on the day of the Como closing.

¶ 12    Ryan testified that he thought that Como was a Bahe property but did not know where the funds for the purchase came from. He could not say for sure why he had written the various checks to Hilary leading up to the Como closing.

¶ 13    Jared did not testify as to the source of those funds. There was no written documentation involving the Szymoniks or any other direct contributions.

¶ 14    The trial court found that Como was titled in Hilary's name and was acquired during the marriage; therefore, her interest was presumed marital. Como was purchased using funds from Hilary's non-marital business interest, Bahe, and funds from the Szymoniks such that Bahe and the Szymoniks each owned a half interest. While the property was purchased during the marriage, Hilary used her non-marital business interest such that Bahe's one-half interest was Hilary's non-marital property. The court found the loans to Bahe to be "traceable, and credible" such that Hilary overcame the presumption of marital property.

¶ 15    Jared appeals from the trial court's classifications of these properties.

¶ 16                                    II. ANALYSIS

- 4 -

¶ 17    We start by admonishing Hilary for failing to follow supreme court rules regarding citations. Orders entered pursuant to Illinois Supreme Court Rule 23 are nonprecedential "except to support contentions of double jeopardy, res judicata, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021). Orders entered after January 1, 2021, may be cited for "persuasive purposes." *Id*.

¶ 18    In her brief, Hilary cites to three unpublished orders (*In re Marriage of Norman*, 2016 IL App (1st) 142664-U, *In re Marriage of Roberts*, 2011 WL 10291216, and *In re Marriage of Diotavelli*, 2011 IL App (2d) 100857-U), all entered prior to January 1, 2021. Her method of citation to these cases fails to identify them as Rule 23 orders (leaving off the "-U" designation from *Norman* and *Diotavelli*), and she never acknowledges the fact that these cases are orders, not opinions. Hilary discusses *Roberts* in depth and argues that this court "should apply the standard set forth in *Roberts*," as it was more recent than the case relied on by Jared. The citation of these cases was improper, and we will disregard the arguments based on these cases.

¶ 19    We also note that Hilary fails to follow supreme court rules regarding citation. Illinois Supreme Court Rule 6 provides that citation of cases filed prior to July 1, 2011 and published in the Illinois Official Reports shall be to the Official Reports; further, for cases filed on or after July 1, 2011, the public-domain citation shall be given. Ill. S. Ct. R. 6 (eff. July 1, 2011). In either case, citation to the North Eastern Reporter and/or the Illinois Decisions may be added. *Id*. Hilary's brief is littered with case citations listing *only* the North Eastern Reporter citation and failing to use either the Official Reports or the public-domain citation.

¶ 20    Adherence to supreme court rules is mandatory, not optional. *People v. Ramos*, 339 Ill. App. 3d 891, 904 (2003). Hilary's counsel is admonished to more closely follow all supreme court rules in any future appeals.

¶ 21    Jared first contends that the trial court erred in classifying two pieces of real estate as non-marital property. Before a trial court may dispose of property upon the dissolution of marriage, it must first determine whether the property is marital or non-marital. *In re Marriage of Henke*, 313 Ill. App. 3d 159, 166 (2000). Section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) establishes a rebuttable presumption that "all property acquired by either spouse subsequent to the marriage" is marital property. 750 ILCS 5/503(a) (West 2018). A party can overcome this presumption only by a clear and convincing showing that the property falls within one of the eight exceptions listed in section 503(a). *In re Marriage of Dann*, 2012 IL App (2d) 100343, ¶ 63. After the trial court classifies the property, it awards each spouse their non-marital property and divides the marital property into just proportions. 750 ILCS 5/503(d) (West 2016). A trial court's classification of property as marital or non-marital will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44. A decision is against the manifest weight of the evidence only where an opposite conclusion is clearly apparent or where the court's findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 22    Jared first argues, in regard to the Emerald property, that Hilary "failed to meet her burden to overcome the presumption of marital property under 750 ILCS 5/503(a)(8)." It is unclear, however, what exactly Jared is arguing was marital property. No one's testimony on the funds used to purchase the property was clear. While Jared thought that half of the funds came from their joint account, he could not remember if one-third of the funds came from Ryan and one-third from Bahe. Ryan had no idea where the funding came from, while Hilary testified that funds came one-third each from Ryan, Bahe, and an inheritance that she had received. While there was no documentary evidence to support Hilary's claim of the use of a non-marital inheritance, and the

trial court specifically found that Hilary failed to overcome her burden of proving the use of a nonmarital inheritance, there was testimony that would support the finding that Ryan and Bahe each put up a third of the price. The question, then, was whether the remaining one-third interest was marital or nonmarital. The trial court specifically found that Hilary had failed to prove that the one-third portion of the property was nonmarital and specifically found it to be marital. The trial court did not err in its findings, and we find no error here.

¶ 23   Jared next argues that the trial court misclassified the Como property. The trial court found that, while the property was acquired during the marriage and was presumed to be marital, Hilary overcame the presumption such that the property was nonmarital. According to Jared, there was insufficient testimony and a lack of documentary evidence of the genesis of the funds used to purchase Como such that the property should have been classified as marital. We disagree.

¶ 24   The trial court found:

> "there was testimony about the way these transactions occurred and there were occasions, not just on these properties, but on other properties, where Ms. Iannuzzi's joint account may have been used to issue a check or to hold earnest money, but Ms. Iannuzzi was able to go through all of the accounts, again, except for, as she described this inheritance money, for all of these other properties, to show that the funds being used were those Bahe, Inc. funds, aside from the fact that there's money that's been loaned. So I do find that this property was never encumbered by a mortgage, it was purchased with Ms. Iannuzzi's nonmarital business interest from Bahe, Inc., and partially from her sister and brother-in-law. I do find that that then would be nonmarital."

¶ 25   We cannot find this decision to be against the manifest weight of the evidence. The documentary and testimonial evidence regarding the funds being placed into Hilary's account

leading up to the use of those funds for closing on the Como property was sufficient to support the trial court's conclusion. The trial court also looked to such transactions regarding other properties that revealed consistent patterns of funding coming from Bahe and being placed into Hilary's account, which was used as a conduit. The trial court found that the money that Hilary loaned to Bahe for such transactions was "clearly traceable," that the loans "happened systematically," could be seen in the bank records, and were "corroborated by written agreements" signed by Hilary and Ryan. The trial court's decision was not unreasonable, arbitrary, or not based on the evidence, and we find no error here.

¶ 26    Jared next contends that the trial court impermissibly found equitable ownership interests in favor of third parties without first joining those parties to the case. According to Jared, the court created potential claims on behalf of the Szymoniks and Bahe, speculating as to the possibility of those parties seeking summary judgment on a suit for quiet title or bringing suit for unjust enrichment or breach of contract. He further argues that, in the absence of joining either Bahe or the Szymoniks, the trial court "was limited to awarding the properties to either Jared's non-marital estate, Hilary's non-marital estate, or the marital estate."

¶ 27    However, the judgment in this case did not adjudicate anyone's interests outside those of Hilary and Jared, let alone award the properties to anyone other than Jared or Hilary. The court found that Hilary failed to prove that the Emerald property was fully non-marital, classifying the property as 1/3 marital and 2/3 non-marital. The court also found that Hilary successfully proved that the Como property was nonmarital, based on the sources of the funds used for the purchase. However, the trial court did not "award" any property to anyone other than Jared or Hilary.

¶ 28    Jared cites to *In re Marriage of Olbrecht*, 232 Ill. App. 3d 358 (1992) for support. In *Olbrecht*, Ted and Helen, while still engaged to be married, along with the Ted's aunt, Harriet,

purchased a house with the intent that all three would live in the house. Harriet provided almost half of the purchase price of the house in the form of earnest money and down payment. Whether that money ($20,000) was meant as a wedding gift was a matter of dispute. The property was titled in Ted's and Harriet's names. *Id.* at 359-60. Throughout the course of the marriage, Ted and Helen paid the mortgage from a joint account and Harriet gave them cash for half of the mortgage payment. When Ted and Helen sought a divorce, Harriet was not brought into the proceedings by either party through a third-party complaint.

¶ 29   After trial, the trial court determined that the house was non-marital property and awarded the house to Ted. *Id.* at 362. Helen appealed, and the appellate court found that trial court's conclusion that the property was non-marital was against the manifest weight of the evidence. *Id.* at 365. The appellate court also found that "the record in the present case lacks evidence as to the marital nature of the *entire* home because Harriet's *interest* in the home has not been adequately addressed." (Emphases in original.) *Id.* The trial court's classification and subsequent distribution of the property inevitably affected Harriet's interest as a necessary party:

> "The record suggests that Harriet was a joint tenant in property that was part of the subject-matter of the litigation. The record further indicates that the mortgage, repairs and improvements and insurance were paid both by Harriet and out of the parties' marital funds, evidence of a joint tenancy. Harriet stated that if the property was sold, 'half of the house would belong to me and the other half would go between the two. Between him [Ted] and his wife.' " *Id.*

¶ 30   We find *Olbrecht* inapposite to our case. The third party in *Olbrecht* held, in part, title to the property and was a joint tenant who lived on the property. A classification of the property as marital would certainly have affected her in a more tangible and significant way than the third

parties in the case before us, thereby making her a necessary party: "one who has a legal or beneficial interest in the subject matter of the litigation and will be affected by the action of the court." See *Id.*

¶ 31 While the court here addressed the contributions of Bahe and the Szymoniks, it did so in the context of analyzing whether the source or sources of the funds used to purchase the properties during the marriage rendered the properties, part of the marital estate. For example, the court addressed the Como property, which was titled in only Hilary's name:

> "1012 Como, Hampshire, is titled in Ms. Iannuzzi's name and was acquired during the marriage. As such, Ms. Iannuzzi's interest is presumed marital. Bahe, Inc. has a one-half interest in this property which is valued as a whole at $169,679.00. The other one-half interest is owned by Ms. Iannuzzi's sister and brother-in-law, Jeff and Morgan Szymonik. The value of Bahe, Inc.'s one-half portion is $84,839.50. This property does not have a mortgage. Como Circle was purchased using funds from Ms. Iannuzzi's non-marital business interest, Bahe, Inc., and funds from Ms. Iannuzzi's sister and brother-in law, Jeff and Morgan Szymonik. Title to said property is held in Ms. Iannuzzi's name alone, and the property was never encumbered by a mortgage. Despite being purchased during the parties' marriage, Como Circle was purchased using Ms. Iannuzzi's nonmarital business interest, and as such, Bahe, Inc.'s 50% interest in Como Circle is Ms. Iannuzzi's non-marital property. Bahe, Inc.'s interest in this property was purchased using funds from Bahe, Inc. accounts. As the Court finds the loans to Bahe, Inc. to be traceable, and credible, *the Court finds Ms. Iannuzzi has overcome the presumption of marital property. Therefore, Ms. Iannuzzi's interest in this property will be her non-marital interest.*" (Emphasis added.)

¶ 32    While the trial court was specific in addressing the evidence presented regarding the sources of funds, the court's finding specifically addressed only Hilary's interest in the property as it arose from funds contributed from Bahe, itself Hilary's non-marital property.  There was no judgment affecting any third parties' rights *viz a vis* Hilary's rights.  We find no error here.

¶ 33                                  III. CONCLUSION

¶ 34    For these reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 35    Affirmed.